[No. 2,509.]

HENRY CONROY AND JAMES ROCHE v. CHARLES P. DUANE ET. AL.

TRANSCRIPT ON APPEAL.—The insertion, in a transcript¡ of conveyances and records at full length, instead of briefly stating their substance and effect, and the copying *verbatim* of the testimony of witnesses by questions and answers, instead of stating so .much of the substance of the evidence as relates to the errors assigned, imposes unnecessary labor on the Court, and cannot be too strongly condemned.

POSSESSION NECESSARY TO MAINTAIN FORCIBLE ENTRY OR DETAINER.— In order to maintain an action for a forcible entry or a forcible detainer, the plaintiff must prove that, at the time of the ouster complained of, he was in the actual and peaceable possession of the demanded premises. A constructive and scrambling possession is not sufficient.

IDEM.—It is also necessary, in order to maintain such action, to prove that the defendant made a forcible entry, or forcibly detained the premises from the plaintiff.

POSSESSION OF LAND.—A sufficient inclosure is of itself an actual possession of land, without a residence upon it, cultivation, or other act of dominion.

NATURAL BARRIER RENDERS FENCE UNNECESSARY.—A natural barrier, such as a deep stream, a precipitous cliff, the shore of the ocean, and the like, will serve as a portion of an inclosure of land, and render a fence unnecessary in order to constitute possession.

WHEN TRANSFER OF TITLE CARRIES POSSESSION.—If one who is in the actual possession of a marsh or mud flat, incapable of habitation or use in its then condition, conveys his title and possession, and the vendee promptly prepares to assert his title and enter into possession, he acquires a possession which is sufficient to enable him to maintain forcible entry or unlawful detainer against an intruder, although at the time the intruder entered, he had exercised no actual dominion or control over the land.

PROOF OF A FORCIBLE DETAINER.—One who goes upon the land several weeks after the alleged ouster and forcible detainer, simply as an employé of the parties who ousted the plaintiffs, and has no other connection with the transaction, is not guilty of an unlawful entry and forcible detainer.

WHAT CONSTITUTES A FORCIBLE DETAINER.—If the entry was unlawful and the detainer was forcible, the defendant is guilty of a forcible detainer, whether he originally obtained possession peaceably or otherwise.

VERDICT IN UNLAWFUL ENTRY AND FORCIBLE DETAINER.—A verdict of
guilty of an "unlawful entry and forcible detainer" is proper in form
under the second section of the Forcible Entry and Detainer Act of April
2d, 1866. The third section of the Act applies to a different class of
detainers.

DEED AS EVIDENCE IN UNLAWFUL DETAINER.—When the grantee of one
in possession brings an action of unlawful detainer against an intruder, the
deed of his grantor is admissible in evidence in his behalf, not as evidence
of title, but as tending to show a transfer of possession.

WHEN ONE IS NOT GUILTY OF UNLAWFUL DETAINER.—One who enters
peaceably and in good faith under a claim of title, is not liable for an un-
lawful detainer, even if he resists the entry of the prior possessor.

EVIDENCE IN UNLAWFUL DETAINER.—The defendant, in an action of un-
lawful detainer, may introduce evidence that before the plaintiff acquired
possession he had exercised acts of dominion over the premises, as tending
to show a claim of title in good faith.

ERROR IN EXCLUDING TESTIMONY CURED.—If the Court errs in refusing
to allow a witness to be examined on certain matters, the error is cured by
subsequently allowing the witness to be examined on the same matters.

REBUTTING EVIDENCE IN UNLAWFUL DETAINER.—If the defendant, in
unlawful detainer, for the purpose of showing that he entered on the de-
manded premises in good faith under a claim of title, offers in evidence a
deed, the plaintiff in rebuttal may introduce a prior deed of the grantor to
another person.

TESTIMONY IN UNLAWFUL DETAINER.—In an action of unlawful detainer,
a deed executed to the defendant after his entry, is not admissible in evi-
dence for any purpose.

INSTRUCTIONS TO JURY.—If the Court, in its instruction to the jury, states
the law of the whole case fully and fairly, it is not error to reject instruc-
tions asked by counsel repeating the law in other language.

APPEAL from the County Court, City and County of San
Francisco.

This action was commenced in February, 1869. The
premises in dispute are in the City and County of San Fran-
cisco, and are described as that certain block of land bounded
by De Haro, Alameda, Carolina, and South Channel streets,
situated upon what is known as the Potrero Nuevo, and
designated upon a certain map on file in the Recorder's
office of said city and county, and marked S.S.W., as Block
169, and so described and known upon the official map of
said city and county. This block was two hundred feet by

three hundred and fifty, and was divided into lots fifty feet by one hundred, each.   Williams built the fence, mentioned in the opinion, in June or July, 1866.   The alleged ouster of the plaintiffs took place about the 15th of September, 1868. On the trial defendants introduced deeds, one from Pratt to defendant Bowers, and one from Farrington and others to Bowers, to show that the defendants entered in good faith and under a claim of title.   The plaintiffs, to rebut this claim of entry in good faith, introduced a deed from Pratt to Wilson, made prior to Pratt's deed to Bowers, and a judgment of Compton against Farrington and others, and a sale by execution of the land, and a Sheriff's deed in pursuance thereof to Compton, made before Farrington's deed to Bowers.   These are the deeds spoken of in the opinion.

The plaintiffs recovered judgment in the Court below, and the defendants appealed from the judgment and from an order denying a new trial.

The other facts are stated in the opinion.

*Nathaniel Bennett*, for Appellants.

The Court erred in admitting the Williams deed, and also the Dent deed, in evidence.   One ground of objection to these deeds was that they were evidence of title only.   They furnished no evidence of possession in the plaintiffs.   We have already insisted that the mere giving of a deed is not *per se* any evidence of possession of the grantee, as title may be transferred without possession being taken by the grantee. Besides, these deeds were objectionable as irrelevant; they proved nothing, they tended to prove nothing material to the case.   They were not admissible as evidence of title; for in this action title cannot be proved, as is generally understood, nor was any attempt made to prove that Williams had title; nor were they admissible as evidence tending to prove possession in the plaintiffs, as we have above seen they

could have no such tendency, as the transfer of title is no evidence that the grantee succeeded to the actual possession.

The plaintiffs never had the actual possession of any part of this block. Williams and the Dents had the possession, if any one had it other than the defendants. The deeds from Williams and the Dents did not have the effect of transferring any possession which they may have had or claimed to have, to the plaintiffs. At the most those deeds transferred to the plaintiffs only a right of possession. But the plaintiffs could not acquire actual possession by virtue of those deeds, except by an actual entry upon and taking actual possession of the premises.

A fence alone and of itself, without any other acts of ownership either by building or living upon the premises, or cultivating them or pasturing them, or making some other use of them, does not constitute actual possession. (*Polack* v. *McGrath*, 32 Cal. 15; *Preston* v. *Kehoe*, 15 id. 315; *Owen* v. *Doty*, 27 id. 502; *Hoag* v. *Pierce*, 24 id. 187; *Mitchell* v. *Davis*, 20 id. 47.)

*D. W. Douthitt*, for Respondents.

So long as the land was fenced on three sides with a natural barrier, the bay or mud flats on the other, the possession of plaintiffs was sufficient to maintain this action. If the whole fence had been swept away by the tides or high water, if the plaintiffs did anything after indicating their intention to hold the land, they could maintain this action. We call the special attention of the Court to the case of *King* v. *St. Louis Gas Co.*, 34 Missouri Reports, 34, which maintains us in this proposition. (*Minturn* v. *Burr*, 16 Cal. 109.)

At the January Term, 1872, the following opinion was delivered by CROCKETT, J., WALLACE, J., concurring:

This is a proceeding under the Forcible Entry and Detainer Act of April 2d, 1866 (Stats. 1865–6, p. 769), to recover the possession of a block of marsh land in the City of San Francisco. The complaint contains three counts, viz: First, for a forcible entry; second, for a forcible detainer; and third, for an unlawful entry and forcible detainer, under the third section of the Act; but the last count was stricken out by the Court. A judgment having been entered for the plaintiffs, several of the defendants have appealed as well from the judgment as from an order denying their motion for a new trial. I deem it necessary to notice only a few of the numerous grounds of error, relied upon by the defendants and contained in the voluminous record of three hundred and thirty-eight printed pages, which has been swollen into its present enormous proportions by the insertion of conveyances and records at full length, instead of stating briefly their substance and effect, and by copying, *verbatim,* the testimony of numerous witnesses, by questions and answers, instead of stating so much of the substance of the evidence as relates to the errors assigned. This method of bringing up a case imposes unnecessary labor on the Court, and a great additional expense upon the parties, and cannot be too strongly condemned. In order to maintain the action, it was incumbent on the plaintiffs to prove, first, that at the time of the ouster complained of they were in the actual and peaceable possession of the demanded premises; their possession must have been both actual and peaceable, as contradistinguished from a constructive and scrambling possession. (*Bowers* v. *Cherokee Bob*, ante, 495; *Barlow* v. *Burns*, 40 Cal. 351.) Second, that the defendants either made a forcible entry, or forcibly detained the premises from the plaintiffs.

I propose first to inquire whether the evidence in chief for the plaintiffs proved or tended to prove that at the time of the alleged ouster they had the *actual* possession of the premises in controversy. Construing this evidence most favorably for the plaintiffs, and giving them the benefit of all presumptions fairly deducible from the facts proved, the following state of facts was shown when the plaintiffs rested, viz: That about two years before the alleged ouster the block in question was inclosed with a substantial fence by H. F. Williams; that the easterly line of the fence was shortly afterwards partially destroyed by a raft which collided with it during a gale; that the fence was quickly repaired, but was again blown down and destroyed by a gale; after which no effort was made to rebuild it prior to the entry of the defendants; that the other three lines of fence remained standing up to the time when the defendants entered; that the two Dents claimed a portion of the block and paid to Williams their proportion of the cost of the fence; that after the easterly line of the fence was destroyed by the gale Williams requested Seguine (who resided on another block in the vicinity) to look after this block for him, which he promised to do; that nothing further occurred until shortly before the alleged ouster, when Williams and the Dents conveyed to the plaintiffs the whole block, except one lot of fifty by one hundred feet; that the plaintiffs paid several thousand dollars to Williams and the Dents for the property, and within a very short time after their purchase made arrangements to rebuild the fence on the easterly line of the block; that, with this view, they hauled a load of lumber and deposited it near by, but not on the block, which was too wet to admit of it; that they sent laborers there to erect the fence, but the defendants, or some of them, who had in the meantime gone upon the block, refused to permit the laborers to erect the fence, and ordered them off the premises, whereupon the laborers left; that thereupon the plaintiffs

went in person and attempted to erect the fence, but were forcibly resisted by the defendants, or some of them; that the block is marsh land, covered by the Spring tides, and unfit for cultivation or any practical use in its present condition, and on the easterly side is the bay, or a mud flat, over which cattle cannot pass. Do these facts establish an actual possession in the plaintiffs? That Williams acquired the actual possession by means of the fence which he erected in 1866, is too plain for argument. It appears to have been a substantial fence, sufficient to turn cattle, and inclosed the whole block. A sufficient inclosure is, of itself, an actual possession of land, without a residence upon it, cultivation or other act of dominion. It is an open and visible appropriation of it to the exclusive use and dominion of the person erecting the inclosure, and protects his appropriation against intrusion. We have been referred to no authority which favors the proposition that a sufficient inclosure does not, of itself, establish an actual possession, and I think none can be found. It is clear, therefore, that Williams had the actual possession so long as the fence remained intact. Whether his actual possession continued after the easterly line of fence was destroyed may possibly depend upon the fact whether there was a natural barrier on that side, which supplied the place of a fence and rendered one unnecessary. It is well settled that under certain circumstances a natural barrier, such as a deep stream, a precipitous cliff, the shore of the ocean, and the like, will serve as a portion of an inclosure, and render a fence or other obstruction on that side unnecessary. In *Brummagim* v. *Bradshaw*, 39 Cal. 24, we had occasion to consider under what circumstances a natural barrier will supply the place of an artificial one in establishing an actual possession of land. Tested by the principles there announced, I think there was evidence in this case tending to show that no fence was needed on the easterly line of the block in order to inclose it sufficiently. Seguine testifies

that "cattle cannot get on the block; the east line is the bay." Conroy and Doyle testify to the same facts. The maps put in evidence also show the east line to be on the margin of the bay, and there was abundant evidence of the marshy character of the whole block. When it. is considered that the land was a salt marsh, covered with water to the depth of two feet at the Spring tides, incapable of cultivation and unfit for habitation; that it was inaccessible to cattle, and was inclosed on three sides with a substantial fence, and on the fourth side fronted on the bay, or on a mud flat in the margin of the bay, over which cattle could not cross, there can be no doubt that this was a sufficient inclosure to establish in Williams the actual possession of the premises. But a more material question is whether the plaintiffs succeeded to the actual possession of Williams before the entry of the defendant. If they did it must have resulted solely from the fact that they purchased the land and took a deed for it from Williams and the Dents, and were preparing to erect the fence on the east line before the defendants entered. They performed no other act of dominion over the property. That the preparation to erect the fence and the assertion of a claim to the property were not of themselves sufficient to constitute an actual possession is obvious. To what extent, if at all, did the deed help out these acts? That a conveyance of lands, even by the true owner in the actual possession, does not necessarily in all cases *proprio vigore*, transfer the actual possession to the grantee, is undoubtedly true. Nevertheless, it may have that effect in certain cases, in connection with very slight acts of dominion performed by the grantee. If the land be permanently covered with water, or a marsh or mud flat, incapable of habitation or use in its present condition, but, nevertheless, substantially inclosed, so as to establish an actual possession in the vendor, by what possible method could the possession be transferred to the vendee, except by

a conveyance of the title and right of possession and an abandonment of all claim by the vendor, coupled with an assertion of title and a right of dominion by the vendee? Must the vendee, at the very moment of receiving the deed, commence to erect another·fence around the premises, or shanties above the mud and water, to be occupied by armed men, to resist aggression, in order to acquire and maintain the possession? On the contrary, from the very necessity of the case, the rule which is applicable to the delivery of bulky and ponderous articles of personal property and of vessels at sea must govern the transaction. In the former case a delivery of a warehouse receipt and in the latter a bill of sale of the vessel will be a sufficient delivery. The rule is founded on necessity, inasmuch as there could not otherwise be an immediate delivery, and therefore, a symbolical delivery is deemed sufficient. So in this case, Williams could not have transferred his actual possession to the plaintiffs otherwise than by conveying his title and right of possession, and renouncing all claim to either in favor of plaintiffs, who promptly asserted their rights as his successors to the title and possession by immediate preparations to rebuild the east line of the fence. The actual possession was not capable of any other method of delivery, and from the necessity of the case this must be deemed sufficient. I am, therefore, of opinion that there was evidence tending to show an actual possession in the plaintiffs at the time of the alleged ouster. But it is claimed that there was no evidence in chief tending to show a forcible entry under the first section of the Act, or a forcible detainer under the second section. But it is unnecessary to inquire whether there was evidence of a forcible entry, inasmuch as the defendants were not convicted of that offense, but of an "unlawful entry and a forcible detainer." Without attempting an analysis of the testimony, it will suffice to say, in respect to the forcible detainer, that, in my opinion, there was evidence

tending to show a forcible detainer and to connect all the defendants with it except Duane, who appears to have gone upon the premises several weeks after the alleged ouster, as an employé of some of the defendants, but whom the evidence fails to connect otherwise with the transaction. The motion for nonsuit was, therefore, properly denied as to all the defendants except Duane, as to whom it should have been granted. The objection made to the verdict is untenable under the second section of the Act. If the detainer was unlawful and forcible the defendant is liable for a forcible detainer, whether he originally obtained the possession "*peaceably or otherwise.*" It is immaterial whether the entry was peaceable or violent, provided it was unlawful and the detainer was forcible. In either event he is liable for a forcible detainer; and the finding in the verdict of an unlawful entry by the defendants, and a forcible detainer by them, is in strict accordance with the second section of the statute. The third section of the Act applies to a different class of forcible detainers, to wit: where the entry was unlawful and make in the night-time, or in the absence of the occupant.

The deeds from Williams and the Dents to the plaintiffs were admissible, not as evidence of title, but, as already stated, as evidence tending to show a transfer of the actual possession of the plaintiffs. The Court charged the jury that they had "nothing to do with the title of either party to the land;" and I think they could not have been misled as to the purpose for which the deeds were admitted. The Court, in its charge, stated so clearly the questions before the jury that it is scarcely possible they could have been misunderstood.

I think, however, the Court erred in excluding certain facts offered to be proved by the witness Farrington, in respect to the erection of a fence in 1854, around a larger tract, including the premises in controversy, and the acts of

dominion exercised over the property by the persons erecting the fence, and their grantees, including some of the defendants, down to the time of the alleged ouster. If the facts offered to be proved were true they would have tended to show at least a claim of title in good faith in the defendants, or some of them; and if they entered peaceably and in good faith, under claim of title, they would not be liable in this action, even though they resisted the entry of the plaintiffs with force. But at a subsequent stage of Farrington's examination he was allowed to detail at length a history of the fences, and of the acts of ownership exercised over the property by the persons erecting the fence, and their successors in interest, down to the time of the ouster. Apparently he was allowed to state all he knew on the subject. The refusal of the Court, in the first instance, to let in this proof, therefore, did the defendants no damage, as it was subsequently admitted. The examination of the witness, chiefly on these points, was prolonged through several days, and appears to have been searching and thorough; and his testimony embraces a history of the land, and of the acts of ownership performed over it, from the year 1852 down to the time of the ouster.

The deeds from Pratt to Wilson, and from the Sheriff to Compton were offered and admitted, not as evidence of title, but solely as touching the good faith of the defendants' entry. They were expressly offered and admitted by the Court for that purpose only, and were clearly competent, as a link in the chain of circumstances tending to show a want of good faith in the entry. The deeds from Farrington & Ludlam to Bowers were made after the entry of the defendants, and after the alleged ouster, and were not admissible as evidence of title, or for any other purpose.

Several other rulings of the Court, in respect to the admission or exclusion of evidence, were excepted to by the defendants, and are assigned as error; but I do not deem

them of sufficient importance to merit particular notice. It will suffice to say, that I discover no error in them.

The defendants requested forty-two special instructions to the jury, a large majority of which were refused by the Court, and each refusal is assigned as error. But the Court, in its charge to the jury, stated the law applicable to the case with great clearness and precision, and as strongly in favor of the defendants as the facts would justify. I discover no error in the charge, as it was given, and which was so full and comprehensive as to embrace every material portion of the defense. The law of the whole case was fairly and fully presented by the charge, and it was unnecessary to repeat it in other forms, tending rather to confuse than to enlighten the jury.

Judgment reversed as to Charles P. Duane, and affirmed as to the other defendants.


SPRAGUE, C. J., concurring specially:

I concur in the judgment.


Mr. Justice RHODES delivered the following dissenting opinion, in which Mr. Justice NILES concurred:

The plaintiffs failed to show that they were in the *actual* possession of the premises in controversy, and, therefore, they are not entitled to maintain an action for forcible entry and detainer.

The judgment and order should, in my opinion, be reversed, and the cause remanded for a new trial.


A rehearing was granted, and at the April Term, 1873, the following opinion was delivered:

By the COURT:

We have carefully reread and considered the briefs and petition for rehearing in this case, but upon the principal questions discussed we still adhere to the conclusions reached in our former opinion. It would subserve no useful purpose to enter again upon the discussion of the numerous points presented.

It is insisted that the judgment should be reversed, because the plaintiffs had regained possession of a portion of the block in controversy before they commenced their action. If it be true that they were in possession of a part of the land when the action was commenced—and the testimony of Conroy tended strongly to show that they were so in possession—then, clearly, they ought not to have had judgment for that part. We cannot, however, reverse the judgment for that reason. It was not ground for a nonsuit, and there is no specification that the judgment in this respect is contrary to the evidence. Nor do we find any instruction upon the point, which was properly drawn, and refused by the Court.

We think the judgment should be modified so as to exclude from its operation lot five of the block. The plaintiff's possession was limited to the property described in their deeds from Williams and the Dents, and these deeds did not purport to convey this lot. It could not, therefore, have been forcibly or unlawfully detained from the plaintiffs, since they never had possession of it. An instruction upon this point was asked by the defendants and refused by the Court. It should have been given, but the error does not call for the reversal of the whole judgment.

It follows that the judgment must be reversed as to Chas. P. Duane, and so modified as to the other defendants as to exclude from its operation lot five of the block in controversy—the appellants to recover their costs in this Court.

So ordered.