## THOMAS YEAM, Respondent, v. E. M. DEMPSEY, Appellant.

(212 N. W. 852.)

**Landlord and tenant — tenant — contract holder — notice to landlord.**

1. In an action brought by a lessor against a lessee to obtain the share of crop belonging to the lessor under the terms of a lease where it appeared that the lessor at the time of the leasing was the holder of a purchase contract from the board of university and school lands, and where it further appeared that there had been an attempted cancellation of such contract without actual notice to the lessor, and where the lessee, upon receipt of notice from the commissioner of university and school lands while the crop was growing, had, without notice to the lessor, entered into a lease with the board through the commissioner, it is held that § 6097 of the Compiled Laws of 1913, makes it obligatory upon every tenant receiving notice of any proceeding to recover the possession of real property to immediately inform his landlord of the same, and this statute applies to a tenant of a contract holder of public lands receiving notice intended to affect the immediate possession and ownership of crops.

**Landlord and tenant — lease void as between landlord and tenant.**

2. Section 6097 of the Compiled Laws of 1913, which provides "The attornment of a tenant to a stranger is void, unless it is made with the consent of the landlord or in consequence of a judgment of a court of competent jurisdiction," has the effect of making void, as between the landlord and the tenant, a subsequent lease made without the consent of the landlord between the tenant and the owner of a superior title.

**Landlord and tenant — tenant — lease — possession to landlord.**

3. Under the above statute it is the duty of a tenant who desires to improve his possessory right to first surrender possession to his lessor.

Opinion filed March 2, 1927. Rehearing denied April 1, 1927.

Landlord and Tenant, 35 C. J. § 604 p. 1247 n. 99; p. 1248 n. 3, 8; 36 C. J. § 1922 p. 688 n. 32 New.

Appeal from the District Court of Bottineau County, *Burr, J.*
Affirmed.

*J. J. Weeks,* for appellant.

"We are aware of no authority, and none has been cited, holding
that crops planted after sale, and dependent for sustenance upon their
continued attachment to the soil, may be harvested by a debtor or his
tenant after title has passed and the right to possession has ceased,
owing to the failure of the mortgagor to redeem." Hendricks v. Stew-
art, 53 N. D. 513, 206 N. W. 790.

"Inasmuch as the tenant is only estopped to deny, where he has once
admitted, the estoppel merely precludes the tenant from disputing title
of the landlord as it existed at the time when the lease was made and
possession given, or when the relation arose." 35 C. J. 1243, § 595.

"Although he (the tenant) cannot show that his lessor had no title
to the premises, when the tenancy commenced, he may, however, show
that the landlord holds in violation of the laws of the state, or that his
interest has since expired, as that he has sold and conveyed the land,
or the like, and that therefore, he has no right to bring the suit."
Taylor, Land. & T. 1st ed. p. 237.

*W. H. Adams,* for respondent.

This contract created certain obligations on the part of both re-
spondent and appellant. They are bound by all of such obligations
unless the contract has been in some way extinguished. The respondent
cannot treat it as good in part and void in part, but must affirm or avoid
it as a whole. Swan v. Great Northern R. Co. 40 N. D. 258, 168 N.
W. 657; Black, Rescission & Cancellation, §§ 561 et seq.

A contract of lease is rescinded in no different manner than any
other contract. 35 C. J. 1173, § 457 and cases cited under notes 58
and 59, p. 1174.

### Statement.

Cole, Dist. J. This case was brought on for trial at the regular
November, 1924 term of the district court in Bottineau county, and
it being a jury case, the attorneys stipulated in open court to waive a
jury and try it before the court, the Honorable A. G. Burr, presiding.
The facts were stipulated before the court and are as follows:

1. That on or about December 1, 1905, the plaintiff purchased from the board of university and school lands of the state of North Dakota the following described premises situate in Bottineau county, North Dakota, to wit: The northeast quarter and the east half of the southeast quarter of section 36, in township 163, north of range 78, west of the fifth P. M., under a contract whereby the plaintiff paid in cash one-fifth of the purchase price for said lands and agreed to pay one-fifth of such purchase price on January 1st of the years 1911, 1916, 1921 and 1926, with 6 per cent interest on all deferred payments, payable in advance on January 1st of each year, and which contract further provided that the plaintiff would be entitled to a patent for said lands upon the completion of such payments; and further provided that in case of nonpayment into the county treasurer of said Bottineau county of the purchase price aforesaid as it became due, or the interest thereon by January 1st of each year, then such contract should become voidable at the option of the state of North Dakota through the board of university and school lands, and the state of North Dakota, through such board, could take possession of the said land and resell the same.

2. That on or about August 28th, 1919, the plaintiff and defendant entered into a lease of the said premises and 640 acres of other lands belonging to the plaintiff, in writing under the terms of which said lease the defendant was to farm the said lands during the year 1920, which said lease, marked Exhibit 1, is hereto attached and made a part of this stipulation. That the defendant E. M. Dempsey continued to farm the said land under the terms and provisions of the said lease which was renewed from year to year by the plaintiff and defendant up to and including the farming season of 1924, and during all of said time and until the end of the farming season of 1924 was in possession of all the lands described in said lease, exhibit 1.

3. That the defendant planted to crop in the spring of 1924 the lands described in paragraph 1 of this stipulation.

4. That the plaintiff, Thomas Yeam, furnished all of the seed for the planting of the crops that were sown and grown and harvested upon the said land in the year 1924.

5. That because of the failure of the plaintiff to make the payments required by said contract of purchase of said land described in paragraph 1, on or about January 31, 1924, the board of university and

school lands of North Dakota declared said contract of sale void, and about the same date notified the plaintiff by written notice mailed to him at Long Beach, California, where plaintiff lived, and also mailed a duplicate copy of said notice at the same time to the auditor of Bottineau county, and ordered the land commissioner to take possession of the land described in said contract.

6. That the said notices of cancellation mailed by the said board of university and school lands to the plaintiff were not received by him, and that he had no notice that the said board of university and school lands had taken any action to declare the said contracts of sale void and to cancel the same until August 25, 1924, at which time he returned from California to Souris, North Dakota.

7. That sometime prior to July 31, 1924, the defendant learned of the cancellation of said contracts referred to in paragraph one hereof and received from the said land commissioner three letters which are marked exhibits 4, 5 and 6 and hereto attached and made a part hereof. That on July 31, 1924, the said defendant entered into two separate written leases with the said board of university and school lands, under one of which he leased the said northeast quarter of section 36, and under the other of which he leased the said east half of the southwest quarter of section 36, which said leases marked exhibits 2 and 3 are hereto attached and made a part of this stipulation, and paid to the state of North Dakota as rental for both of said tracts of land the sum of $120 and the sum of $3 for the drawing of the two leases therefor.

8. That the plaintiff had no notice or knowledge of the said leases made by the defendant until he returned to Souris, North Dakota, on or about August 25, 1924.

9. That the plaintiff on September 22, 1924, tendered to the defendant the sum of $120; that the defendant refused to accept the said money and that thereupon the said plaintiff deposited the same in the State Bank of Souris to the order of the defendant, where the said sum of $120 has ever since remained subject to the defendant's orders.

10. That there was harvested and threshed on the said northeast quarter and the east half of the southeast quarter of section 36, in the farming season of 1924, 2885 bushels of hard wheat and 1520 bushels of Durum wheat, which was sold by the said defendant for the sum of $5,834.65.

11. That there was used in harvesting the said grain 660 pounds of twine, for which the defendant paid the sum of $105.60 and that the defendant paid for threshing said grain the sum of $675.78.

12. That prior to the commencement of this action the plaintiff demanded from the defendant the possession of an undivided one-half of' the grain grown upon the lands described in paragraph one hereof then standing in shock on said land, but that the defendant refused to deliver the same to the plaintiff and retained the same and has ever since retained the same and the proceeds of the sale thereof.

13. That on September 23, 1924, pursuant to the affidavit and undertaking in claim and delivery and the summons and complaint in this action, the sheriff of said Bottineau county took into his possession an undivided one-half interest in the crops grown on said lands during the year 1924, and that on September 26, 1924, the said sheriff released the said crops to the defendant upon the furnishing to the said sheriff by the defendant of the bond required in § 7521 of the Compiled Laws of North Dakota for 1913.

14. That the said sum of $5,834.65 set forth in paragraph 10 of this stipulation shall be taken to be the value of all of the grain raised on the land described in said paragraph 10 during the season of 1924 and one-half of said sum the value of the undivided one-half interest in said grain claimed by the plaintiff, for all the purposes of this action.

The leases executed on behalf of the board of university and school lands by Carl R. Kositzky are a part of the record herein, as are also the several notices referred to and the original lease between the plaintiff and the defendant, and the court has them all before it in determining the case.

The record shows in this case that the State makes no claim to any part of the crop referred to, and therefore the issue is squarely before the court between the appellant and the respondent, the respondent and plaintiff in the lower court having recovered judgment for the one-half of the crop less the legal expenses charged up against it.

## Opinion.

The state of North Dakota could have dispossessed the respondent of his right as lessor to the crop in question but took no action to do so.

The rights of the parties in this suit to the crop in question were before the trial court and were adjudicated in favor of the plaintiff and respondent as against the defendant. We are concerned here with the propriety of this adjudication. We are not concerned with the right of the land commissioner to make leases as he did with the appellant. This matter has recently been decided in what is called the Wittmayer Case, 54 N. D. 845, 211 N. W. 436.

The parties to this suit prior to the cancellation or attempted cancellation by the land commissioner of the respondent's contract with the state were landlord and tenant, and there is here no dispute as to the binding character of the lease executed by them. The sole contention is, in substance, that the state having canceled the purchase contract of the respondent and having leased the premises to the appellant, all rights of the respondent were wiped out and that the appellant, in consequence, became the owner of the one-half share of the crop that would have been the undisputed property of the respondent had there been no cancellation of the contract. It will be seen at once that this contention places to one side the law applicable to the relations existing between the plaintiff and the defendant by virtue of their lease. The law applicable to the relation of lessor and lessee is in no way altered by the fact that the state has made claim to or substantiated a superior title to that of the lessor. In protecting the rights of the state as a fee owner or as a vendor under contracts for the sale of school lands, the legislature has made no exceptions to the general statutes governing the relations of landlord and tenant. It has not removed from the tenant the statutory duty of immediately informing the landlord of any proceeding to recover the property of which he (the tenant) received notice. Neither has it given to the tenant permission to attorn to the State so as to acquire a right to the crops superior to that of his landlord. Section 6097 of the Compiled Laws of 1913 is clearly applicable as between the plaintiff and the defendant. It reads as follows:

"Every tenant who receives notice of any proceeding to recover the real property occupied by him, or the possession thereof, must immediately inform his landlord of the same and also deliver to the landlord the notice, if in writing, and is responsible to the landlord for all damages which he may sustain by reason of any omission to inform

him of the notice or to deliver it to him if in writing. The attornment of a tenant to a stranger is void, unless it is made with the consent of the landlord or in consequence of a judgment of a court of competent jurisdiction."

The stipulated record shows that the appellant, the tenant in this case, did not comply with any of the requirements of this section of our Code, which is mandatory in its nature. The appellant had notice of the action taken against the title of the respondent, his landlord, and was in duty bound to advise him of the same, a duty which he did not perform. The clear intent and purpose of this statute is to protect the landlord or lessor, if he be away from the premises, and the Legislative Assembly must have had in mind the fact that a lessor putting a lessee in possession would be apt to be away from the premises, and that the lessee or tenant would first receive notice of any attack upon or impairment of the title of the lessor.

Not only did the defendant neglect to inform his lessor of the threat of the state to dispossess him, but he immediately took steps to acquire a title to the crops superior to that of the lessor by becoming a tenant of the owner of the superior title, the State. The statute says that the attornment of a tenant to a stranger is void unless made with the consent of the landlord or in consequence of a judgment of a court of competent jurisdiction. This provision of the statute was doubtless borrowed from California where it was enacted as early as 1855. See Thompson v. Pioche, 44 Cal. 508. As to the effect of the statute the California court in that case said (page 515):

"Whatever may be the rule at common law, it is clear that the statute must prevail. . . . The statute declares such attornment void—that is to say, void as between the landlord and tenant, but it is not necessarily void between the tenant and the party to whom he attorned."

The court held that under such a statute it was not within the power of the tenant to destroy the relation existing between him and his landlord by attorning to another person, even to the owner of the land. Under such a statute it is the duty of the tenant who desires to improve his possessory right to first surrender possession to his lessor. Lowe v. Emerson, 48 Ill. 160; Ebersol v. Trainor, 81 Ill. App. 645; Stover v. Davis, 57 W. Va. 196, 49 S. E. 1023; 2 Taylor, Land. & T. § 629;

Simmons v. Robertson, 27 Ark. 50; Bryan v. Winburn, 43 Ark. 28; 35 C. J. p. 1249.

Viewing the matter in this light and applying this interpretation to the statute, the record shows that the appellant in this case neglected his duty in respect to the section quoted, having in view the possibility of profiting thereby to the detriment of the lessor, and that he attorned to the state as the owner of a paramount title. Whether or not this ever entered into the mind of the appellant, the statutory requirement was never complied with under the stipulated facts and the attempted attornment was void. The appellant was at fault, and, in a respect, it may be said, that allowed the respondent unwittingly to permit the cancellation of the contract for the premises in question. This being the fact, the appellant should not be permitted to profit by his own fault. It is not necessary to set out in this connection the lease or any of the exhibits, being notices from the land commissioner, nor is it necessary to set out the leases with the state on the part of the appellant. The sole question is, did the cancellation of the respondent's contract by the state, under the conditions stipulated and the facts found by the court, wipe out the respondent's interest to his share of the crop of 1924, and permit the appellant to get the benefit thereof and take the same? This we think it did not do and could not do. So far as this record shows the respondent still has the right to redeem from the foreclosure of the land contract.

The judgment of the lower court should be in all things affirmed and it is so ordered.

Birdzell, Ch. J., and Nuessle, Christianson, and Burke, JJ., concur.

Burr, J., being disqualified, did not participate; Honorable A. T. Cole, Judge of the First Judicial District, sitting in his stead.

## On Petition for Rehearing.

Cole, District J. The appellant has made an application for a rehearing of the foregoing case by a petition regularly filed. Among other things, he claims there is a wrong construction placed upon the

stipulated facts upon which the case was tried, wherein this Court states that the stipulated record shows that the appellant did not comply with any of the requirements of § 6097 of the Compiled Laws of 1913, and did not advise respondent of the letter sent to him by the state land commissioner, demanding the lease from him. The appellant states that as a matter of fact the stipulation is silent on this point and so was the attorney for the respondent in the district court. He states further, the stipulation states only that respondent did not receive notice of cancellation mailed by the board of university and school lands in January, 1924, and that he had no notice of such cancellation until August 25th. The record however, shows that the appellant did know of the notice of such cancellation and could have notified his landlord Mr. Yeam, and it further shows that he had such notice as in good faith would cause him to and should cause him to notify his landlord under the provisions of the statute in question. It may be added that good faith and good intention would cause one to give such notice to the landlord in addition to the provisions of the statute, and the stipulation being silent on that particular fact, it is evident that if the appellant had fulfilled his statutory duty as required in reference to notice to his landlord, the attorney for the appellant would surely have had it in the stipulation.

The appellant also states that the court is in error in stating that the defendant not only neglected to inform his lessor of the threat of the state to dispossess him, but he immediately took steps to acquire title to the crops superior to that of the lessor. Then the appellant states the facts are, that the appellant merely complied with the demand made upon him by the state, that he pay rent, make a contract with the state or lose his crop. The rent paid by the appellant being $120, paid to the state, and the crop being a large one and of great value, the action of the appellant in effect was to take steps to acquire title to the crops, superior to that of the lessor. If this was not so, he would not have rested upon the payment of $120 to make an opportunity for him to claim the entire share of the landlord running into thousands of dollars in value. The action of appellant is lacking in good faith and a statute coming into question in a law action will not be so construed as to give countenance to what in good faith and equity belongs to another, that may be converted to a party under some particular rigid

construction of law, when in good faith and equity he is not entitled to the same.

The appellant also complains of the court's decision in reference to attornment and claims that there can be no attornment under the conditions that have been set out in the main opinion, as the landlord's title had ended with the cancellation of his contract for the purchase of the land and that the appellant made a new lease on different terms with the state. This contention is, in the judgment of this Court straining at the interpretation of the language of the statute. The statute is concerned with effect and not with words, or a sterile interpretation and application of the law. The deal with the state, if now the appellant could take the landlord's share of the crop in question, was just as disastrous in effect and inequitable or unequitable as though appellant had been dealing with a private party, and the relation of landlord and tenant still existed between him and the respondent.

It is claimed by appellant that the respondent does not show any damages, on account of his failure to inform the landlord, being the respondent in this case, of notice of cancellation or intention to cancel, or to deliver it to him, if in writing. The facts stated in the opinion do show that if the contention of the appellant should be supported by this Court and the action of the trial court reversed, the damages would run into thousands of dollars.

The speculation in the petition for rehearing that the respondent waited from August 25th, until the 22d day of September before offering to repay appellant the $120 lease money with the state, that respondent was waiting to see how the crop would mature, is seemingly, under the facts in the case, rather far fetched and strained, and the idea cannot be adopted by this court.

The appellant further states that the provisions of the statute that: "The attornment to a stranger is void," should not be applied to this case for the reason that the state of North Dakota is not and was not a stranger to the title here involved. Appellant claims that under § 320, Compiled Laws of 1913, the fee of this land was at all times in the state of North Dakota and remained in the state of North Dakota until patent is issued. The facts in this case, however, show that so far as the dealings between the appellant and respondent, tenant and landlord, are concerned, the state has played the part of a stranger

to any right in the crop, because of the fact of the lease of the 120 acres for $120 or $1 per acre, which had on it not only the appellant's share of crop, but the share of crop of the landlord, the respondent, running into value of thousands of dollars.

The appellant insists that, if this court affirms the judgment appealed from, the judgment should in any event be modified to the extent of $390.69, the amount of the respondent's share of the twine and threshing bill paid by the appellant. It is true that the lease so obligates the respondent. It is likewise true that the trial court found the combined twine and threshing bill to be $781.38 and that in the judgment it omitted to charge the respondent with his one-half share. While the appellant predicated error on this failure to credit the respondent, such assignment was not argued in the brief and within the well established principles governing appellate practice the assignment was properly deemed waived when the original opinion was written. However, in the interest of justice it would seem that the respondent is entitled to be credited with $390.69 and that the judgment should be thus modified. As so modified, the judgment is affirmed and the petition for rehearing denied.

BIRDZELL, Ch. J., and NUESSLE, BURKE, and CHRISTIANSON, JJ., concur.

BURR, J., being disqualified, did not participate; Honorable A. T. COLE, Judge of the First Judicial District, sitting in his stead.