# WOODBURY v. BUNKER et al.

No. 6142.   Decided February 7, 1940.   (98 P. 2d 948.)

*Cline, Wilson & Cline,* of Milford, for appellant.

*J. A. Melville,* of Salt Lake City, for respondent.

PRATT, Justice.

J. G. Woodbury is a resident of California. He was not present in Utah at the times hereinafter mentioned. On the 28th day of November, 1936, he rented to John E. Steele and Zephys L. Steele, his wife, certain premises located in Delta Townsite, Millard County, Utah. This was evidenced by a written instrument reading as follows:

"To the Sheriff of Millard County, Utah:

"This is to acknowledge that pursuant to an Alias Writ of Possession issued out of the District Court of Millard County, Utah, in the case of *J. G. Woodbury, plaintiff* vs. *John E. Steele and Zephyr L. Steele, defendants,* on the 14th day of November, 1936, I have this day voluntarily yielded possession to the said plaintiff to the following described property in Delta, Utah, to-wit:

" 'The North half of Lot 1, in Block 79, Plat "A" Delta Townsite Survey in the County of Millard, State of Utah.'

"This will further acknowledge that I now hold possession of the said property as a tenant of the said J. G. Woodbury for a rental of $15.00 per month. The payment of said rental being herewith handed to you, the said sheriff.

"It being understood that on or before 30 days from the date hereof that I shall voluntarily vacate said premises.

"Dated at Delta, Utah, this 28th day of November, 1936.

                                        "(Signed)  John E. Steele
"Witness:
    "Dudley Crafts."

The Steeles paid two months' rent. This carried them to, and including, January 27, 1937. On this last day, it is said that one Ben Bunker took possession of the property under and pursuant to a tax deed arising out of delinquent drainage district taxes. The record is uncertain as to whether Steeles were still in possession of the premises or had abandoned them. However, whichever it was, the Steeles, it is claimed, on that same date rented the premises from Bunker and re-entered or remained in occupancy if they had not left. They gave no notice to Woodbury of a repudiation of his lease. These facts subsequently became known to the latter, who made demand for the premises. His demand was refused, and he instituted this forcible detainer action against Bunker, the Steeles, and some other alleged tenants of Bunker, E. A. and Flora Brown. The Browns defaulted, so we drop them from the picture.

Bunker answered and set up as an affirmative defense and as a counterclaim, his tax title and right to possession thereunder, seeking to have the title to the property quieted in himself. The Steeles answered that they were tenants of Bunker. Both denied an unlawful entry as against Woodbury. The latter demurred to these answers and moved to strike them on the ground that they were not proper defenses to this action. The demurrers were overruled and the motions denied. The case proceeded to trial upon facts stipulated as above, but without prejudice to Woodbury's contentions.

The lower court quieted title in favor of Bunker, allowing the Steeles to remain in possession as his tenants. Woodbury has taken this appeal. There are two main questions involved in the case: (1) Was such an affirmative defense and counterclaim proper as against an action of forcible detainer; and (2) were Bunker and the Steeles guilty of an unlawful entry as against Woodbury?

(1) We are of the opinion that the case of *Paxton* v. *Fisher*, 86 Utah 408, 45 P. 2d 903, 906, is decisive of this first question so far as the facts as pleaded in this case are

concerned. The authorities are in conflict as to right of possession and title being a proper defense in every forcible detainer action. Mr. Justice WOLFE has covered that subject in his concurring opinion herein. We refer the reader to that discussion. ■

Section 104-60-2, R. S. U. 1933, is our forcible detainer statute. Paragraph (2) thereof, is applicable to the facts as pleaded in this case. It reads:

"Every person is guilty of a forcible detainer who either: * * *
"(2) * * * during the absence of the occupants of any real property, unlawfully enters thereon, and, after demand made for the surrender thereof, refuses for the period of three days to surrender the same to such former occupant. The occupant of real property within the meaning of this subdivision is one who within five days preceding such unlawful entry was in the peaceable and undisturbed possession of such lands."

Speaking of the purpose of this section, Mr. Justice Moffat in the prevailing opinion of the Paxton-Fisher case says this:

"* * * The purpose of the statute is to provide a speedy remedy, summary in character, to obtain possession of real property. Even rightful owners should not take the law into their own hands and proceed to recover possession * * * during the absence of the occupants of any real property."

(2) In his concurring opinion in the Paxton-Fisher case, Mr. Justice Wolfe defines "unlawful entry" in this way:

"* * * The word 'unlawful,' as used in this section, means unlawful with respect to the relations between the plaintiff and defendant. See *Dutcher* v. *Sanders*, 20 Cal. App. 549, 129 P. 809. In *Carteri* v. *Roberts*, 140 Cal. 164, 73 P. 818, 819, the court said:

" 'It is a necessary element to the cause of action here presented that the entry of the defendants upon the land should have been unlawful with respect to the relations between the defendants and the plaintiff.'

"The entry is unlawful in respect to the relation between the plaintiff and defendant whenever the defendant enters without the permission of the plaintiff. * * *"

There seems to be no controversy between the parties that this action is one in forcible detainer. Woodbury alleges: Abandonment of the premises by his tenants; his own peaceful possession thereof; entry of Bunker in his absence and without his permission; his demand for the premises and the refusal by Bunker and the Steeles to relinquish possession, the latter having been reinstated on the premises as tenants of Bunker; and finally, that he, Woodbury, has been in peaceful possession for *more* than five days immediately preceding the "unlawful entry". (We have italicized the word "more" for the reason that the statute uses the word "within," in the definition of an "occupant". However, as *more* than five days includes the period of *within* five days, the error is not prejudicial.) In addition, Woodbury seeks damages of $250.00.

If, then, the stipulated facts support these allegations, Woodbury should recover—the demurrers and the motions being sufficient to dispose of the affirmative defense and counterclaim. But do they support the allegations?

There are two likely situations deducible from those facts. We shall designate them as A and B.

A. If, before Bunker entered the premises, Steeles had moved off and abandoned possession of the place, then the right to bring a forcible detainer action against a third party, for an unlawful entry under para. (2), Sec. 104-60-2, R. S. U. 1933, reverted to Woodbury, the landlord, because he is entitled to peaceful possession. Under such circumstances, Woodbury would be in the position of being temporarily absent from the property. Then the entry of Bunker and his tenants, the Steeles, if within five days of abandonment by the tenants of Woodbury, would be "unlawful" as to the latter.

B. But suppose Steeles did not abandon the premises, and were there when Bunker entered. The evidence is against any thought of their subsequently having abandoned the place to Bunker. In fact, after they had agreed to remain as his tenants, he left the place in their possession.

What is the nature of the entry upon the possession of a tenant, who permits that entry, as between the entrant and the landlord, where the tenant has not repudiated the tenancy by notice to the landlord?

Under such circumstances, it is our opinion that the entrant has not acquired possession of the premises. So long as the tenant remains in possession, his possession is that of the landlord, and he cannot by words or acts make his possession or that of one whom he permits upon the premises a possession adverse to the landlord. *Stagg* v. *Eureka Tanning & Currying Co.,* 56 Mo. 317; *Houk* v. *Kirby Petroleum Co.,* Tex. Com. App. 65 S. W. 2d 496; *Yeam* v. *Dempsey,* 55 N. D. 259, 212 N. W. 852. The entrant is no more than a permittee, the scope of whose rights upon the premises is limited by the permission given him and the term of the tenant's lease. His entrance being by permission is not an unlawful entry, and therefore, he is not, except as hereinafter stated, the subject of an action of forcible detainer. But upon the expiration of the tenant's lease, the tenant is subject to ouster by an unlawful detainer action (not forcible detainer) under and pursuant to Section 104-60-3, R. S. U. 1933; and, if so ousted, those who are on the premises with his permission may be ejected by the sheriff as well. In other words, the ouster of a tenant by such an action, ousts his family, servants, guests and such others as may be there by his permission. It terminates their right to be upon the premises. If they enter thereafter, their entrance is an unlawful entry as against the landlord, to whom peaceful possession has reverted, for the statutory five day period, upon the ejection of the tenant.

This brings us to the question of the disposition of the case. If the facts are as suggested under A above, they support the allegations of the complaint and Woodbury should recover. What if they are as suggested under B? Is it necessary to have the pleadings amended? We think not.

The circumstances of the case are peculiar. Steeles are repudiating their tenancy under Woodbury; they are claiming tenancy under Bunker; they agreed with Bunker to become his tenants; and they permitted him to enter upon the premises with the thought in mind that they would become his tenants. They undoubtedly believed that his tax title would protect them. We stated above that the tenant can not, by his words or acts, make his own possession, or that of him whom he permits upon the premises, adverse to the landlord. This presumes that the landlord is adverse to such action upon the part of the tenant. But what is there to prevent the landlord accepting that situation when confronted with it, and treating the continued possession of Bunker and Steeles as a forcible detainer? We see nothing.

It is our opinion that under such circumstances, Woodbury may accept that repudiation and those acts on the part of the Steeles as a termination of the tenancy as of the time of the entry of Bunker. The tenancy being so terminated, possession lay in Woodbury, and Bunker's entry and his occupation through his alleged tenants, the Steeles, after proper notice to vacate, constituted an unlawful entry as against, and a forcible detainer from Woodbury, who in this case must through his former tenants, Steeles, be considered as having had occupancy within five days of Bunker's entry.

Whether the facts fall under A or B, the plaintiff is entitled to recover under the circumstances and pleadings of this case.

The judgment and decree of the lower court is vacated and the case remanded for a determination of the question of damages. Costs to appellant.

MOFFAT, C. J., and LARSON and McDONOUGH, JJ., concur.

WOLFE, Justice (concurring).

I concur. Interpretation of statutes like or similar to ours have not only varied from state to state but within the

states. Much of this confusion is due to the failure to see that forcible entry and forcible detainer were two different things although a forcible detainer might have been initiated by a forcible entry, and due to the further failure, perhaps, to distinguish between two different types of forcible detainer. Difficulties also arose from the fact that, whatever the interpretation, it seemed to work an injustice in certain cases.

The purpose of the Act seems essentially to be to protect the possession of an occupant—not a mere trespasser or intruder—against an interference with that possession except through course of law. It would, at this point, be useful to have the salient parts of the Forcible Entry and Detainer Statutes before us so that this distinction may be thoroughly understood. They read as follows:

104-60-1. Forcible Entry:

"Every person is guilty of a forcible entry, who either:

"(1) By breaking open doors, windows or other parts of a house, or by fraud, intimidation or stealth, or by any kind of violence or circumstance of terror, enters upon or into any real property; or,

"(2) After entering peaceably upon real property, turns out by force, threats or menacing conduct the party in actual possession."

104-60-2. Forcible Detainer:

"Every person is guilty of a forcible detainer who either:

"(1) By force, or by menaces and threats of violence, unlawfully holds and keeps the possession of any real property, whether the same was acquired peaceably or otherwise; or,

"(2) In the nighttime, or during the absence of the occupants of any real property, unlawfully enters thereon, and, after demand made for the surrender thereof, refuses for the period of three days to surrender the same to such former occupant. The occupant of real property within the meaning of this subdivision is one who within five days preceding such unlawful entry was in the peaceable and undisturbed possession of such lands."

With respect to the showing that plaintiff must make in maintaining an action for forcible entry or detainer, Section 104-60-11, R. S. U., 1933, states:

"On the trial of any proceeding for any forcible entry or forcible detainer the plaintiff shall only be required to show, in addition to the forcible entry or forcible detainer complained of, that he was peaceably in the actual possession at the time of the forcible entry, or *was entitled to the possession at the time of the forcible detainer*." (Italics added.)

These words in Subsection (11) requiring a claimant in forcible detainer to prove that he "was entitled to the possession at the time of the forcible detainer" have given the courts much trouble. If under Paragraph (2) of Sec. 104-60-2 it is necessary for the claimant to prove that he had a better right of possession than the entrant in addition to the fact that the claimant had been an occupant within five days of entrance, and that he had come in during the night-time or during the claimant's absence, the action would seem to permit issues other than occupancy. In fact, in many cases the title would be drawn into issue. The question is whether the words "entitled to possession", as far as Paragraph (2) of Sec. 104-60-2 is concerned, require any proof by the former occupant in that regard other than that he had been an occupant within five days before the entrance of the defendant.

The decisions in the states having the same statute as ours, or having substantially like phrases, are diametrically opposed. In California we find cases going both ways on the interpretation of these very phrases. The difficulties of understanding the California decisions have been further enhanced by the confusing in those decisions of forcible detainer with forcible entry, for which action would have lain in any event. Of course, where one forcibly enters he may also forcibly detain, but he may forcibly detain without forcibly entering. The cases have sometimes lost sight of this fact. We shall briefly advert to the California cases, which, if studied by the reader in the light of what has been said above, will be more understandable.

In 1872 California passed statutes with the same wording as our Sections 104-60-1; 104-60-2; 104-60-11, R. S. U. 1933,

known as Sections 1159, 1160, and 1172, respectively, of the California Code of Civil Procedure. But earlier than 1872 there were statutes with similar provisions. *Mitchell* v. *Davis,* 1863, 23 Cal. 381, was an action for forcible entry and detainer. The court said there that even though defendant has legal title and right to possession, he may not take the law into his own hands—a declaration perfectly consistent.

For failure clearly to separate the forcible entry factor from that of forcible detainer, see *Mecham* v. *McKay,* 1869, 37 Cal. 154; *Warburton* v. *Doble,* 1869, 38 Cal. 619; *Wilbur* v. *Cherry,* 1870, 39 Cal. 660; and *House* v. *Keiser,* 8 Cal. 499, 500, where the court said a mere "scrambling" possession was not sufficient to maintain forcible entry and detainer, apparently recognizing that there must be more than mere trespass or just occupancy. To this effect is *Voll* v. *Butler,* 49 Cal. 74. In *Treat* v. *Forsyth,* 1871, 40 Cal. 484 and in *Conroy* v. *Duane,* 1873, 45 Cal. 597 the words "unlawful entry" were given the connotation of being without permission of the occupant. But in *Powell* v. *Lane,* 1873, 45 Cal. 677, it was held that he who had title and right of possesion was not guilty of an unlawful entry if he entered his own property in the absence of the occupant. The court lost sight of the fact that "forcible entry" involves force. It was talking of "forcible detainer". If it meant that a defendant with right of possession who had entered in the absence of one who was a bona fide occupant within five days could successfully defend in a forcible detainer action, the holding must be considered as later overruled. In *Potter* v. *Mercer,* 1879 53 Cal. 667 (under the 1872 Code), the court squarely held in line with *Powell* v. *Lane,* supra, that a party cannot be guilty of forcible detainer if he obtains possession peaceably from an occupant who is entitled to possession. To like effect is *Goldstein* v. *Webster,* 7 Cal. App. 705, 95 P. 677. In *Spiers* v. *Duane,* 1880, 54 Cal. 176, the court seemed to recognize that a mere "scrambling" possession (occupancy) would not sustain an action for unlawful detainer. But in *Voll* v. *Hollis,* 1882, 60 Cal. 569; *Giddings* v. *Land & Water*

*Co.* 83 Cal. 96, 23 P. 196, and *McCauley* v. *Weller,* 12 Cal. 500, the court held that all entries on *actual* possession are unlawful and the question of good or bad faith on the part of the defendant does not affect the right of recovery. And *Carteri* v. *Roberts,* 1903, 140 Cal. 164, 73 P. 818 made that more definite by holding that "unlawful entry" meant unlawful with respect to the relation between defendant and plaintiff, distinguishing the class of cases represented by Voll v. Hollis on the ground that in those cases there was a contractual relation between plaintiff and defendant which made the entry permissive and therefore not unlawful. This distinction was again noted in *Dutcher* v. *Sanders,* 1912, 20 Cal. App. 549, 129 P. 809, which case seems definitely to have settled the law in California to the effect that the plaintiff need only show an entry without his permission, and that the possession he is entitled to is the peaceable occupation he enjoyed within five days of the entry. In *Paxton* v. *Fisher,* supra, we adopted the same view. The Sanders case seems also to hold that "occupant" includes a landlord whose tenant has left, and that entry after the tenant has vacated is an entry in the absence of the occupant, the landlord. See *California Products, Inc.* v. *Mitchell,* 52 Cal. App. 312, 198 P. 646. The unlawful entry test laid down in the Sanders case was adhered to in *Hedden* v. *Waldeck,* 89 Cal. App. 494, 265 P. 344, and *Baxley* v. *Western Loan & Building* Co., 135 Cal. App. 426, 27 P. 2d 387. Thus California seems committed to the doctrine enunciated in *Paxton* v. *Fisher,* supra.

Washington has practically the same statute as California. In *Gore* v. *Altice,* 33 Wash. 335, 74 P. 556, in dicta in *Ridpath* v. *Denee,* 85 Wash. 322, 148 P. 15, affirmed *Denee* v. *Ankeny,* 246 U. S. 208, 38 S. Ct. 226, 62 L. Ed. 669; in *Sunday* v. *Moore,* 135 Wash. 414, 237 P. 1014; and in *Angel* v. *Ladas,* 143 Wash. 622, 255 P. 945, is laid down the rule substantially as enunciated in *Dutcher* v. *Sanders,* supra.

But in *Randolph* v. *Husch,* 159 Wash. 490, 294 P. 236, 237, the court said:

"If this were the first time we were called upon to construe the

statute, the logic of the appellant [that by the words 'that he was entitled to the possession,' plaintiff must show a legal right to possession in him] would be very appealing, but the statute has been on the books for many years, and we have repeatedly used language which indicates the view that the rule to be applied is the same in both forcible entry and forcible detainer cases"

—that is to say, that right of possession is not in issue.

In Oklahoma the opposite view is held, that it is necessary for plaintiff to show that he has a right of possession and not mere peaceable undisturbed occupancy. See *Clark* v. *Keith*, 86 Okl. 156, 207 P. 87 and *Wilson* v. *Davis*, 182 Okl. 435, 78 P. 2d 279.

Missouri evidently holds as does California. See *Beeler* v. *Cardwell*, 29 Mo. 72, 77 Am. Dec. 550. A note in 77 Am. Dec. 552, cites Kansas, Iowa, Illinois, and Nebraska as states where the right of possession may be put in issue, but see *Brown* v. *Feagins*, 37 Neb. 256, 55 N. W. 1048; and *Tarpenning* v. *King*, 60 Neb. 213, 82 N. W. 621. As to Texas which seems to follow the Oklahoma doctrine, see *Null* v. *DeYoung*, Tex. Civ. App., 71 S. W. 2d 335.

By now it should be fairly apparent to the reader that there is a sharp conflict of authority. And it should also be apparent that one may take either view without being beyond the confines of permissible range of credible opinion. But the more important thing is to settle the law in this state.

In *Paxton* v. *Fisher*, supra, we followed the later California decisions in construing Paragraph (2) of Sec. 104-60-2, R. S. U. 1933, holding the words "unlawfully enters" to mean unlawfully as relating to an occupant who was there within five days. We adhere to this holding as enunciated in the main opinion. As to this paragraph we construe the words "entitled to possession" to mean that the person must show occupancy within five days of the other's entry. The statute is directed to preserve one's right of occupancy whether personal or constructive.

But this construction opens up difficulties with **Paragraph (1)** of Section 104-60-2 which covers the case where there is no necessity of surreptitious entry on the occupancy of another. The claimant who knocks for entry may not have been an occupant but may be the real owner with the right of possession and therefore entitled to it. A mere trespasser or one with only a "scrambling" possession, by refusing to to give up possession, would be unlawfully holding or keeping possession. It is even doubtful whether, as against such, a possessory action would need to be brought. But where the defendant claims under color of title or makes a bona fide claim of possession under a third party, the situation is more difficult. Can, in such a case, the defendant prevent the knocking claimant from succeeding in the summary action after he has kept him out by force or threats, by showing only that he was a bona fide occupant under claim of right, or must he show a better right to possession than the claimant in order to succeed in the summary action? If he must show a better right in order to prove that he was not "unlawfully" withholding possession, he takes a great risk of being assessed for treble damages when he defends against a claimant who knocks at his door, although he in good faith believes that he has lawful occupancy and possession. We would incline to hold that he need not take this risk were it not that the last part of Section 104-60-11 throws doubt upon such an interpretation. We complete the quotation of the words of that Section as follows:

"The defendant may show in his defense that he or his ancestors, or those whose interest in such premises he claims, had been in the quiet possession thereof for the space of one whole year continuously next before the commencement of the proceedings, and that his interest therein is not then ended nor determined; and such showing is a bar to the proceedings."

The negative implication from such wording is that if the occupant-defendant *cannot* show the conditions therein set out, the knocking claimant may prevail. It gives countenance to the contention that under Paragraph (1) of Sec. 104-60-2,

the issue of better right of possession, with its more basic issue of title to prove the right, may be drawn into controversy, even though the title may not be adjudicated, but that even if the claimant can prove it, he still does not prevail if the defendant occupied for 12 months or more under the conditions specified in the wording last quoted. In such a case it may be that even a claimant with good title and right of possession is barred from a summary remedy; otherwise not.

But since it is not necessary to decide this question in this case, a posing of the question is sufficient. We, therefore, leave open the question of whether the words "entitled to possession" should be given a meaning, when applied to a claimant under Paragraph (1) of Sec. 104-60-2, which requires the claimant to prove as against the occupying defendant, a *better* right of possession than has the latter.