[No. 5407.]

F. A. POTTER, A. W. POTTER, AND B. G. FULLER *v.* ROBERT J. MERCER, WM. J. BUTLER, JOHN COOK, JOHN TROUNSON, AND JOHN DOE.

| 53 | 667 |
| 79 | 443 |
| 53 | 667 |
| 87 | 130 |
| 53 | 667 |
| 88 | 219 |

LANDLORD AND TENANT — VERBAL AGREEMENT FOR WRITTEN LEASE. — If there be a verbal agreement for a written lease for a term of one year, to commence *in futuro,* and if the lessor refuse to make a verbal lease, and the contract was for a written lease only, and was so understood by the parties, the contract was not a lease *in presenti,* but only an agreement for a written lease *in futuro,* and the proposed lessee acquired thereby no estate in the premises as lessee.

SAME—QUERY AS TO' THE POSSESSION.—In such a case, if the terms of the agreement are explicit and free from ambiguity, and from them it clearly appears that it was not intended to be a verbal lease *in presenti,* but only a contract for a written lease *in futuro,* effect will be given to the agreement according to its terms; and if, immediately after the verbal agreement is entered into, and in the expectation that the written lease will be thereafter executed, the proposed lessor, in advance of the commencement of the term, permits the proposed lessee to take lumber into the building for the purpose of fitting it up as a store, whether the entry for that purpose will vest the proposed lessee with the possession of the building—query ?

SAME—EFFECT OF DELIVERY OF POSSESSION.—But if, by his entry under these circumstances, the proposed lessee be deemed to have acquired the possession of the building, such delivery of possession cannot be invoked to overthrow the agreement, and to convert it into a lease *in presenti.*

RE-ENTRY OF LESSOR.—If the proposed lessor afterwards refuse to execute the written lease, and if the license to enter thereupon be revoked, and if the proposed lessor afterwards peaceably re-enter, his entry is lawful.

GENERAL RULE AS TO EXECUTORY LICENSE.—The general rule applicable to license in respect to real property is, that an executory license is revocable at the will of the licensor, even though the licensee has expended money

on the faith of the license, and that, too, without refunding the money expended.

EXECUTED OR PARTIALLY EXECUTED LICENSE. — An executed or partially executed license excuses the licensee from liability for acts done in pursuance thereof, before revocation. But if the license be only partly executed, no further acts can be done under it after revocation.

WHEN FORCIBLE ENTRY WILL NOT LIE.—If a person be in the unlawful but peaceable occupation of the real property of another, and if the true owner, peaceably and without force, violence, or threats, regains the possession, and thereafter excludes the late occupant by force from the possession, the latter cannot maintain an action for a forcible entry or a forcible detainer.

APPEAL from the County Court of the City and County of San Francisco.

The action was for forcible detainer, brought under subd. 2 of sec. 1160 of the Code of Civil Procedure. The plaintiffs claimed to have rented a store on Post Street, which was the property of the Mechanics' Institute. The plaintiffs allege in their complaint that while in the actual, quiet, and undisturbed possession of the premises, the defendants unlawfully entered the same, and have ever since with force withheld possession from them. This is denied by the defendants, who claim that they entered the premises lawfully and under the authority of the landlord; that the store was never rented to plaintiffs, and that they never held possession thereof in the manner and form alleged. Plaintiffs obtained a verdict in the Court below for restitution of the premises and five hundred dollars damages, which were trebled by the judgment, in accordance with the law, so as to amount to fifteen hundred dollars. Defendants moved for a new trial, which was denied, whereupon they appealed from the judgment and from the order denying a new trial. The other facts are stated in the opinion.

*Estee & Boalt*, for Appellants.

The evidence is insufficient to sustain the verdict. Plaintiffs cannot maintain this action unless they show unmistakably: 1. Peaceable and undisturbed possession in themselves of the premises. 2. An unlawful entry by defendants. 3. The unlawful entry must have been in the night-time, or in the absence of plaintiffs. Neither of these essential elements has been shown;

for, First—they were warned that the store had been leased to another; they were notified that they had no right there; they were forbidden to put their lumber in.   Second—to sustain this action it is absolutely essential that the entry should be unlawful.   (*Owen* v. *Doty*, 27 Cal. 505.)   But an entry made in good faith, even although wrongfully, is not unlawful.   If defendants entered peaceably and in the belief that they had a legal right to enter, then their entry was lawful.   (*Shelby* v. *Houston*, 38 Cal. 442; *Dennis* v. *Wood*, 48 Cal. 363; *Townsend* v. *Little*, 45 Cal. 676; *Hoag* v. *Pierce*, 28 Cal. 187; *Randall* v. *Falkner*, 41 Cal. 242; *Dickenson* v. *Maguire*, 29 Cal. 220; *Dickenson* v. *Maguire*, 9 Cal. 48; *Thompson* v. *Smith*, 28 Cal. 532.)   Defendants entered under the authority of the landlord and by the right of a lease.

*J. C. Bates*, for Respondents.

The law makes an entry such as that of the defendants in this case an unlawful entry, after a refusal to deliver possession upon demand in writing.   (*Leroux* v. *Murdock*, 51 Cal. 543; *Wilson* v. *Shackleford*, 41 Cal. 630; *Brown* v. *Perry*, 39 Cal. 24; *Shelby* v. *Houston*, 38 Cal. 422, and cases cited.)

By the Court, CROCKETT, J.:

The most important question on this appeal is, whether the verbal agreement which one of the plaintiffs testified was entered into on the 27th day of September, was a lease *in presenti* for a term of one year, to commence on the 1st day of October next ensuing, or whether it was only an agreement for a written lease to be thereafter executed.   There is no conflict in the evidence to the effect that a written lease was to be executed, and that the agents of the lessor refused to make a verbal lease.

F. A. Potter, one of the plaintiffs, on cross-examination, was asked the question whether there was an understanding between the parties, that when they got through with the negotiations a written lease was to be made?   To which he answered: "My understanding was that, when I rented the store in the morning, they told me that they would make out a written lease.   I went

to occupy it with that understanding." A. W. Potter, another of the plaintiffs, testified: " I told him [Mercer] that we would be satisfied with a verbal lease, for that would hold it for the year at any rate. He says: ' Well, I can't make the lease a verbal lease. I would have to see Mr. Davis. Whatever arrangements you make with Mr. Davis would be satisfactory.' " Fuller, another of the plaintiffs, testified that in a conversation with Davis, the day before the alleged leasing, Davis " made the remark for Mr. Mercer to make out the lease and submit it to him to read." There is nothing in all the testimony tending to show that the lease was to be verbal. On the contrary, the whole of the evidence on that point tends to show that the agents for the lessor refused to make a verbal lease, and that the parties all understood that the lease was to be in writing, and was to be submitted to Davis for his approval before taking effect. This circumstance of itself is sufficient to show that the parties could not have understood the conversation which occurred on the 27th of September as a lease *in presenti*, and must have understood that it was not intended to vest an estate in the plaintiffs until the agreement should be consummated by a written lease.

If a proposed lessor, during the entire negotiation, explicitly refuses to make a verbal lease, and thereupon it is mutually agreed that the lease shall be reduced to writing, it is difficult to see on what ground it could be held that the verbal agreement for a written lease is of itself a lease *in presenti*. To give this construction to the verbal agreement would be to bind the lessor by a verbal lease, when he refuses peremptorily to make a verbal lease. In other words, it would be, by construction of law, to make a valid verbal lease *in presenti*, in the face of a distinct understanding between the parties that there was not to be a verbal lease at all. The verbal contract may be a valid agreement for a written lease, for a breach of which an action for damages would lie ; but it is not of itself a lease *in presenti*.

But much stress is laid upon the fact that immediately after the verbal agreement for a written lease, which the plaintiff testifies occurred during the forenoon of September 27th, he was permitted to take lumber into the building to fit it up as a store,

and was allowed to occupy it for that purpose, in advance of the commencement of the term.   The transaction, as testified to by plaintiff, was, that immediately after the verbal agreement for the written lease was entered into with Mercer, he [the plaintiff] went to Davis and told him that he had leased the store, and that Mercer promised to make out the written lease in the course of the day ; and " asked his permission, or rather, asked him if it would be presuming, if I·should go and take my lumber there and commence my work   *   *   *   putting in my fixtures, shelving, etc., for business; he said that he had no objections." He further testified that he then went directly to Mercer's office and told him that Davis had given permission to put the lumber in, to which Mercer replied: " All right; whatever Mr. Davis says in the matter is all right."   Mercer then told him where to get the key ;  and after getting it, he immediately employed a carpenter, who on the same day took lumber into the building and commenced work.   The only other evidence on this point was that of Davis, who testified that he consented that the plaintiffs might put their lumber on the sidewalk, but said further : " I would certainly not have given them possession, if I had had the power, until the lease was executed and the rent was paid."   For the purposes of this decision, it will be assumed that the transaction was as stated by the plaintiff.

Whether a license to enter under these circumstances for the specific purpose of fitting up the store, and the entry under the license, had the effect in law to vest in the plaintiff the possession of the building may admit of a grave doubt, and we are not to be understood as holding that it had that effect.  But for the purpose of this decision only we shall assume that it did.

When an agreement for a lease has been reduced to writing, and even though it contain a stipulation that a formal lease in writing shall be subsequently executed, the question has frequently arisen whether the written agreement operates as a lease *in presenti*, or only as an agreement for a lease *in futuro*.· In such cases the rule, as established by numerous decisions, is, First. That effect will be given to the instrument according to the intention of the parties, to be ascertained from all the terms of the instrument itself, considered in the light of the surround-

ing circumstances. Second. That if the instrument contain words of a present demise, it will be deemed a lease *in presenti*, unless it appear from other portions of the instrument that such was not the intention of the parties. Third. That if possession be given under the agreement, this will be a circumstance tending to prove that it was intended as a lease *in presenti.* On this point see 1 Washburn on Real Property, 300, side page, and cases there cited; *Chapman* v. *Towner*, 6 Mees. & W. 100; *Jones* v. *Reynolds*, 1 Q. B. 306; *Doe* v. *Benjamin*, 1 Perry & D. 440; *Bacon* v. *Bowdoin*, 22 Pick. 401; *Jenkins* v. *Eldridge*, 3 Story, 325; *People* v. *Gillis*, 24 Wend. 201; *Jackson* v. *Delacroix*, 2 Wend. 430.

. In such cases, the delivery of the possession is considered as one of the elements in the transaction tending to throw light on the intention of the parties to the instrument, and as one of the attending circumstances in the light of which the instrument is to be construed. The same rule may properly be applied in ascertaining the intention of the parties to a verbal agreement for a lease. In each case the object is to ascertain whether the parties intended a lease *in presenti*, or an agreement for a lease *in futuro ;* and the delivery of the possession becomes material only in so far as it may tend to throw light on the intention of the parties, and thus enable the Court properly to construe the agreement. But if there be nothing doubtful in the agreement, by the very terms of which it plainly appears that it was intended as an agreement for a written lease *in futuro*, and not a lease *in presenti*, the delivery of the possession is an immaterial circumstance. It cannot be invoked to overthrow an agreement, the terms of which are so plain and explicit as to speak for themselves, and which need no interpretation. If, for example, the agreement be in writing, and explicitly declares on its face that it is intended only as an agreement for a written lease *in futuro*, and is not to be deemed a lease *in presenti*, the delivery of the possession could cut no figure in construing such an instrument, which would speak for itself, and the terms of which were in no wise doubtful. The same rule applies in construing a verbal agreement for a lease. If the terms of the agreement are plain, intelligible, and free from

ambiguity, and if from these it clearly appears that the agreement was for a written lease *in futuro*, and not for a verbal lease *in presenti*, and was so understood by the parties, the Court will give effect to it according to its terms, and the delivery of the possession will have no office to perform in aiding the Court to interpret a contract which, by its terms, is so explicit as to need no interpretation.

Such, as we have seen, was the character of this contract. The plaintiffs themselves understood it as an agreement for a written lease *in futuro*, and not as a verbal lease *in presenti*, and did not pretend at the trial that they understood it otherwise. Moreover it is perfectly clear, from all the testimony on the point, that the permission to take in lumber and to commence fitting up the store in advance of the commencement of the term, was given on the hypothesis that the verbal agreement would be consummated by the execution of a written lease to conform to the verbal agreement. But when the contract fell through, from whatever cause, and was never consummated by a written lease, the purpose for which the entry was permitted ceased.

The plaintiffs, as we have seen, acquired no estate in the premises by virtue of the verbal contract; and if they can maintain this action, their right to do so must rest wholly on the license to enter, followed by their possession under it. But the license was revocable from the beginning, and was actually revoked on the evening of the same day on which it was given. A license in respect to real estate is defined to be, "An authority to do a particular act, or series of acts, on another's land, without possessing any estate therein." (2 Bouv. Law Dict. 45, Tit. "License"; 1 Washb. on Real Property, 398, side page, and authorities there cited.) And the general rule, as settled by the weight of authority, is, that an executory license is revocable at the will of the licensor, even though the licensee has expended money on the faith of the license, and that, too, without refunding the expenditure. (2 Bouv. Law Dict. 5; 1 Washb. on Real Property, 348; 11 Mass. 433; 15 Wend. 380; 10 Conn. 378; 23 Ibid. 223; 3 Duer, 355; 11 Met. 351; 2 Gray, 302; 24 N. Y. 364; 13 Ibid. 264; 4 Johns. 418; 3 Wis.

117; 13 Mees. & W. 838; 33 Eng. L. and E. 489; 5 Barn. & A. 1.)

But the effect of an executed or partially executed license, though revoked, is to excuse the licensee from liability for acts done properly in pursuance thereof, and their consequences; but the revocation puts an end to the license, and no further acts can be justified under it. (2 Bouv. L. D. 45, and author- ities there cited.)    Applying these principles to the license under consideration, it results that the entry of the plaintiffs under the license, and their possession, was lawful so long as the license continued in force; but when it was revoked, their right to the possession ceased, and the defendants were entitled to re-enter, if they could do so peaceably.    The proof shows that they did re-enter peaceably and without force or violence, and their entry was not unlawful.

The complaint, however, charges that the defendants, during the temporary absence of the plaintiffs, entered, " with a strong hand and force," and have kept and retained the possession " by force and with a strong hand."

The proof, however, shows that the entry was peaceable and without force.    But after thus obtaining the possession, the de- fendants, on the following morning, refused to permit the plaint- iffs to enter.    And it is suggested that this made out a case of forcible entry under the second subdivision of sec. 1159 of the Code of Civil Procedure, or of a forcible detainer under the first subdivision of sec. 1160.    If this construction of the stat- ute be correct, it would result that if one be peacefully, but un- lawfully, in the possession of another's dwelling-house, and if the true owner, in the absence of the occupant, peacefully, and without violence or threats, regain the possession of his own property and then refuses to permit the intruder to reënter, he would be guilty of a forcible entry under subd. 2 of sec. 1159, or of a forcible detainer under the first subdivision of sec. 1160. But the statute was not intended to apply to such a case.    The Forcible Entry and Detainer Act of 1866 contained provisions identical with those above quoted from the Code of Civil Proced- ure; and the case of *Powell* v. *Lane*, 45 Cal. 677, involved a con- sideration of those provisions.    In that case the defendant

was the owner of a tract of land, on which was a vacant house, into which the plaintiff entered without right, and continued in peaceable occupation of it for several months. During the absence of the plaintiff, the defendant entered peacefully and removed the plaintiff's furniture from the building. On the return of the plaintiff, the defendant refused to permit her to enter, and she thereupon brought an action for a forcible entry and a forcible detainer ; and we held that the action could not be maintained. There is no difference in principle between that case and this, on the point now under consideration.

On the facts disclosed by the record, the verdict and judgment should have been for the defendants, and the motion for a new trial ought to have been granted.

Judgment and order reversed, and cause remanded for a new trial. Remittitur forthwith.

Mr. Justice McKINSTRY concurred in the judgment.

Mr. Chief Justice WALLACE and Mr. Justice NILES did not express any opinion.