[Civ. No. 9104. First Appellate District, Division Two.—November 24, 1933.]

EDWARD C. BAXLEY, Appellant, v. WESTERN LOAN & BUILDING COMPANY (a Corporation), Respondent.

Norman H. Elkington for Appellant.

Donahue, Hynes & Hamlin and Charles V. Barfield for Respondent.

SPENCE, J.—Plaintiff's complaint herein was entitled "Complaint in Forcible Entry and Detainer". The cause was tried by the court sitting without a jury and from a judgment in favor of defendant, plaintiff appeals.

In 1930 the defendant corporation as vendor entered into a contract of sale with one Blaine as vendee covering the apartment house in question. It was an installment contract providing for monthly payments, giving the vendee the right of possession "until a breach or a default by the vendee" and giving the vendor the right upon any breach or default to "reenter upon the premises and resume possession thereof". The last regular monthly payment upon the contract was made in August, 1931. Following the default, various amounts were paid to defendant from time to time, but no payment was made after July 26, 1932. At that time the vendee was in arrears on several payments. Blaine had assigned the contract to one Puissegur who in turn assigned it to plaintiff on August 24, 1932. Plaintiff took possession following the assignment of the contract to him, but, as above stated, no further payments were made. Plaintiff never resided upon the premises but engaged a Mrs. Roberts to act as manager. On September 13, 1932, one of the employees of defendant talked with Mrs. Roberts, told her that the defendant corporation was the owner of

the premises, and told her that the vendee was in arrears in the payments. The following morning Mr. Campbell, another employee of defendant, went to the premises and advised Mrs. Roberts that he represented the defendant and was going to take possession and remain on the premises for defendant. Mrs. Roberts admitted Mr. Campbell, installed him in one of the vacant apartments and agreed with Mr. Campbell that she would act as manager of the apartments for and on behalf of defendant. Mr. Campbell remained continuously on the premises thereafter. On the afternoon of September 14th plaintiff appeared at the apartment house and demanded that Mr. Campbell leave the premises. Mr. Campbell refused to do so. The evidence showed that either force or threats of force were used by both parties during the discussion which followed. Plaintiff left the premises and thereafter made written demand on defendant for the possession of the same. Defendant refused to surrender possession and this action was subsequently brought.

In drawing the complaint plaintiff intermingled in a single cause of action allegations in the words of both sections 1159 and 1160 of the Code of Civil Procedure. The first-mentioned section defines *forcible entry,* while the second defines *forcible detainer.* In proceeding with his proof, plaintiff showed that he went into possession under the "contract of sale by the Western Loan and Building Company to sell to the assignor of Alexander Puissegur" and that he went out of possession of the premises in the manner above described.

■ Taking the position that neither title nor right to possession of real property are ever issues in actions where either *forcible entry* or *forcible detainer* are charged, appellant contends that the trial court erred in admitting evidence of the contract of sale and the defaults thereunder, and further contends that the evidence was insufficient to sustain the findings and judgment as "both forcible entry and forcible detainer were proven". With these contentions we cannot agree. While appellant's argument finds support in the broad language employed in some of the decisions, we believe that the authorities fully sustain the proposition that the right of possession may be shown in certain cases where *forcible detainer* is charged, of which this is one.

■ In our opinion the evidence in the present case did not show a *forcible entry*. The actual entry by respondent was not accompanied "by any kind of violence or circumstances of terror". (Sec. 1159, Code Civ. Proc., subd. 1.) The manager in charge of the premises did not offer any resistance of any kind to the entry, but, on the contrary, the manager assisted in placing respondent in possession and accepted employment as manager of the premises under respondent. It is therefore apparent that there was no *forcible entry* within the meaning of the first subdivision of said section 1159. The second subdivision of that section makes a person guilty of *forcible entry* "who, after entering peaceably upon real property, turns out by force, threats, or menacing conduct, the party in possession". We believe that this subdivision defining *forcible entry* was intended to cover situations where access may have been peaceably gained but the possession of the one making the peaceable entry was not complete until the occupant was evicted by force or the like. In other words, if the peaceable entry merely gave the one entering what has been termed a "scrambling possession" with the party then in possession of the premises, then the use of force in turning out the one in possession would make the otherwise peaceable entry a *forcible entry* within the meaning of said subdivision. Here respondent obtained complete possession of the premises in a peaceable manner and neither its entry nor its right of entry was actually disputed by anyone during the time respondent was taking possession. We therefore conclude that there was no *forcible entry* under either subdivision of said section 1159. The case of *Kerr* v. *O'Keefe*, 138 Cal. 415 [71 Pac. 447], which is strongly relied upon by appellant to sustain his contention that there was a *forcible entry*, will be hereinafter discussed.

The more serious question is whether there was a *forcible detainer*. Section 1160 of the Code of Civil Procedure provides: "Every person is guilty of a forcible detainer who either—1. By force, or by menaces and threats of violence, *unlawfully* holds and keeps the possession of any real property, whether the same was acquired peaceably or otherwise; or, 2. Who, in the night-time, or during the absence of the occupant of any lands, *unlawfully* enters upon real property and who, after demand made for the surrender

thereof, for the period of five days, refuses to surrender the same to such former occupant. The occupant of real property, within the meaning of this subdivision, is one who, within five days preceding such unlawful entry, was in the peaceable and undisturbed possession of such lands." (Italics ours.) It will be seen that the word "unlawfully" is used in both subdivisions of said action relating to *forcible detainer*.

In contending that there was a *forcible detainer* in the instant case, appellant calls our attention to certain decisions in which it is indicated that "all entries on the actual possession of another are unlawful" and that the questions of title and right of possession can never arise in actions charging *forcible entry* or *forcible detainer*. (*Kerr* v. *O'Keefe*, 138 Cal. 415 [71 Pac. 447]; *Voll* v. *Hollis*, 60 Cal. 569; *McCauley* v. *Weller*, 12 Cal. 500.) This is undoubtedly true in actions charging *forcible entry* under section 1159 for "the peace and good order of society demand that an actual and peaceable occupation of real estate, however it may have been originally acquired, shall not be disturbed by violence". (12 Cal. Jur., p. 597.) It is likewise generally true in actions charging *forcible detainer* under section 1160, for in such summary proceedings the law will not ordinarily permit the litigation of title and right to possession by the adverse claimants and therefore the entry, although peaceable, is treated as "unlawful". There is an exception, however, to the general rule in actions charging *forcible detainer*. When contractual relations exist between the parties whereby the right to possession has been given to the one taking possession by means of the peaceable entry, then neither the entry nor detention of the property is "unlawful" within the meaning of said section 1160 dealing with *forcible detainer*.

It may be freely conceded that neither the decisions nor the language employed therein are entirely harmonious, but the exception to the general rule is clearly indicated in *Dutcher* v. *Sanders*, 20 Cal. App. 549 [129 Pac. 809, 810], a case which is cited and relied upon by appellant. The parties there were adverse claimants in a contest before the United States Land Office involving land in the possession of plaintiff. The contest was decided against plaintiff and defendant took possession of the land in the absence of

plaintiff. Thereafter defendant refused to relinquish possession on plaintiff's demand and plaintiff brought an action in *forcible detainer* under subdivision 2 of said section 1160. The court there held that defendant's peaceable entry was "unlawful" despite the fact that in the previous contest the commissioner of the general land office had canceled plaintiff's "previously existing desert-land entry upon said land" and awarded "a preference right of entry" to defendant. The court there discusses certain earlier decisions and on page 553 distinguishes said decisions upon the ground "that the questions there presented involved alleged contractual relations between the parties with respect to the entry made". On page 554 the court said, "The word 'unlawful' as used in the section, means unlawful with respect to the relations between plaintiff and defendant." In *Carteri* v. *Roberts,* 140 Cal. 164 [73 Pac. 818, 819], another action in *forcible detainer,* the court said at page 166, "It is a necessary element to the cause of action here presented that the entry of the defendants upon the land should have been unlawful with respect to the relations between the defendants and the plaintiff." (See, also, *Goldstein* v. *Webster,* 7 Cal. App. 705 [95 Pac. 677]; *Potter* v. *Mercer,* 53 Cal. 667; 12 Cal. Jur. 611.)

In the instant case there were contractual relations between appellant and respondent involving the right to possession of the premises. Under these circumstances the reason for the rule, which ordinarily prohibits the litigation of title and right to possession between adverse claimants in these summary proceedings, no longer exists. Appellant, as assignee of the vendee under the contract, could not question the title of respondent. (*Gervaise* v. *Brookins,* 156 Cal. 103, 107 [103 Pac. 329].) Upon default in the payments, respondent was entitled to possession under the contract between the parties and could take possession if it could be done peaceably. (*Francis* v. *West Virginia Oil Co.,* 174 Cal. 168, 170 [162 Pac. 394]; 25 Cal. Jur., p. 696, at 697.) We are of the opinion that when respondent, acting under its right conferred upon it by the contract between the parties, obtained possession of the premises by means of a peaceable entry, neither the entry upon nor the detention of the premises was "unlawful" within the meaning of the subdivisions of said section 1160 relating to *forcible detainer.*

We now come to a further consideration of the case of *Kerr* v. *O'Keefe, supra.* In certain respects the facts in that case are somewhat analogous to those before us. Defendants were owners of a ranch and had leased it to plaintiff. The lease gave defendants the right to re-enter and take possession in the event of default by plaintiff. Plaintiff did not reside on the ranch, but had his home a few miles away. Plaintiff defaulted and defendants entered upon the premises. At the time of the entry one Minaker was living on the ranch "looking after the place for plaintiff". Defendants arrived with blankets, provisions and a shotgun. Although Minaker "forbade them from taking possession" they moved in "and occupied the house with Minaker". Defendants did not prevent Minaker from continuing with his work on the ranch and Minaker continued to reside there for some time after defendants came. Plaintiff came to the ranch within a day or two after defendants' entry and an argument ensued. Shortly thereafter plaintiff came to harvest some crops and another argument followed during which one of the defendants told plaintiff "he would make him get off the place". Said defendant started for the house where the shotgun was kept and plaintiff "got out". A judgment for plaintiff was affirmed, the court holding that the evidence was sufficient to show a *forcible entry*. On its facts that case may be distinguished from the instant case in two particulars. Defendants' entry there was made with shotgun in hand and in defiance of the protest of the one "looking after the place for plaintiff". Furthermore, defendants never came into complete possession of the premises in a peaceable manner, but only obtained a "scrambling possession" disputed by the representative of plaintiff, who remained on the premises with defendants until after plaintiff was evicted by threats of force. While the court there said that "the entry of defendant was in fact peaceable", it nevertheless held that under the circumstances "the subsequent exclusion of plaintiff by force and threats constituted a forcible entry under the statute". The soundness of that decision on the facts there involved cannot be questioned, but as already indicated, those facts are clearly distinguishable from the facts before us.

It follows that the evidence relating to the contract between the parties and to the defaults thereunder was properly admitted and that the evidence was sufficient to support the findings and judgment in favor of the defendant.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 23, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 22, 1934.