[Civ. No. 5849.   Third Appellate District.—October 4, 1937.]

TEMPLAR MINING COMPANY (a Corporation), Appellant, v. LEANOR WILLIAMS, as Executrix, etc., et al., Respondents.

Charles L. Gilmore for Appellant.

W. E. Davies for Respondents.

PLUMMER, J.—Action in forcible entry and detainer brought by plaintiff and appellant against defendants and respondents to recover possession of certain mining lands situate in Yuba County. The defendants had judgment, and the plaintiff appeals.

The record shows that on or about the 7th day of April, 1934, the defendants in this action leased certain mining property to parties named therein, who thereupon assigned said lease to the plaintiff in this action. The plaintiff appears to have mined and operated said premises under the lease and option throughout the period involved in this action, the last work being done on April 28, 1936. On that date, work ceased. All tools, machinery and equipment of every kind and character were left upon the premises. The lease, which, by the way, contained an option to purchase, contained the following clause:

"In the event of the violation of any of the terms or conditions of this agreement by second parties, or failure or neglect to make payments as herein provided, and in the event such default or failure is not cured within thirty (30) days from and after written notification by first parties, this agree-

ment may, at the option of first parties, be canceled, and first parties shall retain all moneys paid as liquidated rent for the use and occupancy of said premises by second parties.''

On May 2, 1936, the respondents entered upon the leased premises, took possession of the same, locked the gates leading thereto on one road, and on the only other remaining road felled a tree across it so as to block ingress. On May 12, 1936, the plaintiff caused to be personally served on defendants a written demand for the possession of the premises, together with all mining machinery, etc. This demand, not having been complied with, the plaintiff filed its complaint in this action. At the conclusion of plaintiff's case in chief, the court granted the defendants a nonsuit on the question of forcible entry.

The first contention of the appellant that the court erred in granting the defendants' motion for nonsuit on the question of forcible entry appears to be well taken. The record shows that possession was taken by the defendants on the 2d day of May, 1936, while the employees of the plaintiff were absent therefrom; but it also shows that the plaintiff and its employees were excluded by force by the defendants after the taking possession of the premises referred to. Which brings the case within the rule laid down in *Kerr* v. *O'Keefe,* 138 Cal. 415 [71 Pac. 447], where it is stated: ''If the entry is accomplished without force, but is retained and the plaintiff is excluded by force, there has been a forcible entry.'' So far as we have been advised, this rule has not been modified.

Section 1442 of the Civil Code reads: ''A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created.'' As just stated, the lease involved in this action requires a notice to be given by the lessor to the lessee stating the alleged failure to perform the conditions of the lease by the lessee, and that unless such conditions are complied with within thirty days, a forfeiture will be declared.

In *Jameson* v. *Chanslor-Canfield Midway Oil Co.,* 176 Cal. 1 [167 Pac. 369], we find the following language applicable here: ''The event which causes the forfeiture is the failure of the lessee to perform any of the conditions embodied in the lease for a period of thirty days after notification. It is only upon the giving of this notice, and the failure to per-

form the conditions mentioned therein, that the forfeiture can be declared. This is the condition which must happen in order to give a right to declare a forfeiture.''

In *Metzler & Co.* v. *Stevenson,* 217 Cal. 236 [18 Pac. (2d) 330], a like question was before the court, and the court there, referring to the case which we have just cited and also to the more recent case of *Jones* v. *Pier et al.,* 124 Cal. App. 444 [12 Pac. (2d) 646], where there was a like provision in the lease, held that the language of the lease was controlling, and that there could be no forfeiture until notice had been given allowing thirty days within which to comply with the terms of the lease. It was further held that the lessors must all join in giving the notice. In the instant case the record shows that there has been an entire absence of any attempt even by the lessors to give the plaintiff the notice required by the terms of the lease. No portion of the transcript has been cited by any of the parties showing the giving of such notice, and we have been unable to find anything in the record establishing compliance with the terms of the lease in this particular. From this it follows that the entry by the defendants upon the leased premises on the 2d day of May, 1936, four days after the last work was done on the premises by the plaintiff, was wholly unwarranted and not in accordance with the terms of the lease.

As a defense to the action the respondents argue that the plaintiff had abandoned the mining premises prior to the 2d day of May, 1936. The testimony upon this question is substantially as follows: That the actual mining operations on the premises ceased on January 19, 1936; that some time prior to May 2, 1936, an attachment had been levied upon the mine for a debt in the sum of over $3,000. This attachment, however, had been released prior to the 2d day of May, 1936. The lease called for work to the extent of fifty shifts per month. It does not appear that this number of shifts were actually performed. It is claimed by the respondents that the shaft of the mine had been permitted to remain in a flooded condition, whereby the timbers and logging rotted and decayed. Our attention has not been called to any testimony supporting this contention. It is further contended that the financial condition of the company was such that it was unable to pay its debts; that on

the 28th day of April, 1936, actual work on the premises ceased.

It is further contended by the respondents that the plaintiff gave permission to a certain company to remove the mill on said premises, and in support of this contention called an officer of the plaintiff and examined him under the provisions of section 2055 of the Code of Civil Procedure. This witness testified as follows:

"I am president of the Templar Mining Co., and the company purchased part of the mill on the premises from the U. S. Machinery Co. Prior to May 2, 1936, we gave permission to the U. S. Machinery Co. to take away the crushers because the crusher was giving us trouble and we replaced it by another crusher. We had made arrangements with the U. S. Machinery Co. in regard to the mill which had been giving us trouble. They were to take the ball mill out and give us credit and put in another mill in place of the one on the premises. Mr. Williams took possession of the property before we had a chance to get the other one on there. We had made arrangements with the U. S. Machinery Co. to make the change. They were to take away the ball mill. The mill itself consists of more than the ball mill. You have to have the other equipment along with the mill. On May 2d the mill that was on the premises had been placed there by my company and a portion of it had been purchased from the U. S. Machinery Co. Nothing had been removed prior to that time except the crusher that was giving us trouble. We had them take it away and replaced it by another crusher. The mill consisted of a 30-ton cyanide plant, grizzly belt feeder, ball mill, classifier, several different cyanide things. You have to have different solution tanks, water tanks. It was a complete plant. We purchased it as a complete 30-ton cyanide plant. There was also the assay office with assay equipment. As far as I know, that equipment which we purchased from the U. S. Machinery Co. was there on the 29th day of April, I don't know whether it was subsequently removed or not. None of our members have been allowed on the property since, as I understand it. We did not give the U. S. Machinery Co. permission to remove the equipment purchased from them. We gave them permission to remove the ball which was to be replaced by another mill.

That was some time in April. . . . I saw Mr. Henry in connection with the removal of the mill either in March or April of this year. I think Mr. Henry was up to the mine the latter part of April. He went up to get the ball mill and the classifier. The classifier was removed along with that. It was under capacity of what he agreed to do."

In *Thornton* v. *Phelan*, 65 Cal. App. 480 [224 Pac. 259], the court had before it the question of abandonment, and after a review of the cases, said: The decisions are uniform in holding that abandonment is a question of intention, and that abandonment may be proved by the acts and conduct of the party alleged to have abandoned the property in controversy. The burden also rests upon the party alleging abandonment to prove the same by satisfactory and competent evidence." In that case all the evidence on the subject of abandonment consisted of a failure to pay taxes, the cessation of work, and the forfeiture of its rights to do business by failure of payment of corporation taxes. It was held the evidence was insufficient to establish the fact of abandonment.

The principle set forth in the case of *Thornton* v. *Phelan*, *supra*, has been approved in the following cases, which we simply cite, omitting quotations therefrom. *Clement* v. *Reynolds*, 117 Cal. App. 484 [4 Pac. (2d) 286]; *Booth* v. *Los Angeles County*, 124 Cal. App. 259 [12 Pac. (2d) 72]; *Nelson* v. *Schoettgen*, 1 Cal. App. (2d) 418 [36 Pac. (2d) 665]; *Alberti* v. *Jubb*, 204 Cal. 325 [267 Pac. 1085]; *City of Los Angeles* v. *Abbott*, 129 Cal. App. 144 [18 Pac. (2d) 785].

That there was no one on the premises on the 2d day of May, 1936, when the respondents entered the same, is wholly immaterial, as the right of possession was still in the plaintiff. (*White* v. *Pfieffer*, 165 Cal. 740 [134 Pac. 321].)

All the cases hold that non-user alone, without any intention of abandonment, does not constitute abandonment. We cite only the leading case of *Utt* v. *Fry*, 106 Cal. 392, 397 [39 Pac. 807].

The respondents rely upon the case of *Riedman* v. *Barkwill*, 139 Cal. App. 564 [34 Pac. (2d) 744]. The facts recited in the opinion in that case readily distinguishes the holding there had, from what should be our decision in this case. In the Barkwill case the defendants, on the 29th day of April, 1930, discontinued all operations, and conveyed all of the

property located on the premises, to other parties; that they then vacated and abandoned the premises, and made no further attempt to perform any work thereon. The plaintiff had made frequent demands upon the defendants to proceed with the work. On April 29, 1930, the plaintiff served a notice upon the defendants of their default and demanding their performance; that six months before January 19, 1931, the Oil Tool Exchange had acquired all personal property except the casing, and that the parties, for several months, negotiated for the purchase from plaintiff, of such property, including the casing. The well was idle from the 29th day of April, 1930, until January, 1931. It was held that the facts found in that case justified the conclusion that the defendants had abandoned the premises. In the Barkwill case it thus appears that many months had elapsed without any work being done upon the premises, and that whatever property belonged to the defendants had been disposed of by them. Nothing of that kind appears in the present case, and just as said in the case of *Herbert* v. *Graham,* 72 Cal. App. 314 [237 Pac. 58], giving the most favorable interpretation (for plaintiff) : ''We are of the opinion that the evidence failed utterly to show any abandonment, but on the contrary it at most shows a mere disuse or non-user of the grant for the period of six or seven months'' (here, only four days). The court in the Graham case further said: ''While the question of abandonment is one of intention, to be determined only upon an investigation of all the facts and circumstances, still where there is no dispute as to the facts or the inferences to be drawn therefrom, the question becomes one of law.'' The testimony shows simply a negotiation as to an exchange of certain machinery and a non-use of the premises for four days. We see no escape from the conclusion that such testimony is insufficient to support the theory of abandonment.

As a further ground for reversal the appellant urges that the court erred in its instructions to the jury, and especially calls our attention to the following one which was modified by the court to read as follows: ''If you should find from the evidence that the plaintiff entered into the possession of said mining property under an option or agreement for the purchase of the same, and that the plaintiff made default in any of the terms, conditions, payments and cove-

nants in said contract, on its part to be paid, kept or performed, without any lawful excuse, then the defendants were lawfully entitled to take possession of said premises in accordance with the option agreement entered into, and their entry upon said land was not unlawful, and you should find for the defendants.''

As authority for the foregoing, such cases as *Baxley* v. *Western L. & B. Co.*, 135 Cal. App. 426 [27 Pac. (2d) 387], and *Champion Gold Min. Co.* v. *Champion Mines*, 164 Cal. 205 [128 Pac. 315], are cited. A reference to these cases shows that the lease or instrument under consideration contained provisions to the effect that upon default in the performance of any of the conditions specified, the lessor was entitled to take immediate possession. Every case relied upon to support the instruction just quoted contains such a provision, which renders every one of them inapplicable, in view of the fact that the lease and option agreement contained a clause requiring notification to be given, and that forfeiture could not be claimed until thirty days thereafter.

We do not need to refer to other instructions following the same line, as the error here complained of, by noticing the distinction in the cases, will probably not again be committed.

It follows from what we have said that the judgment of the trial court should be reversed, and it is so ordered.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 3, 1937, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 2, 1937.