[Civ. No. 17076.  First Dist., Div. One.  Apr. 1, 1957.]

BERNICE ANN MOLDOVAN et al., Respondents, v. ROSA E. FISCHER, Appellant.

ROSA E. FISCHER, Appellant, v. BERNICE ANN MOL-DOVAN et al., Respondents.

602

Wagener, Brailsford & Knox and Francis C. Starr for Appellant.

Harris, Darter & Older, Cyril Viadro, Harpham & Holt, Wilfred J. Harpham and Howard C. Harpham for Respondents.

PETERS, P. J.—Bernice and David Moldovan and Mary Hauschildt brought an action against Rosa Fischer to determine their right to possession of certain realty, for declaratory relief, for an injunction, and for damages. Rosa Fischer then brought an action against the Moldovans and Mary Hauschildt involving the same property for forcible entry, forcible detainer, and for fraud, praying for restitution of the realty and for damages. The actions were consolidated for trial. The trial court decided in favor of the Moldovans and Mary Hauschildt in both actions, and judgments were entered accordingly. Rosa Fischer appeals from both judgments.

The Moldovans own a building and equipment in Oakland suitable and licensed by the state for the operation of a rest home for the aged. On January 2, 1954, they leased this building, its fixtures, furniture and equipment to Mary Hauschildt for five years, the lessee paying the last year's rent of $7,200 in advance. Mary Hauschildt operated the premises as a rest home until January 2, 1955. The lease contained a clause prohibiting its assignment or subletting the premises without the written consent of the lessors, the lessees agreeing that they would "not unreasonably withhold their consent." It was also provided that the "taking a partner or partners by Lessee shall not be deemed an assignment or a sub-letting within the meaning of this paragraph."

In November of 1954 Rosa Fischer came upon the scene. In that month she and Mary Hauschildt executed a limited partnership agreement, and filed with the county their certificate of limited partnership. By the terms of the limited partnership agreement the partnership was to commence January 2, 1955, and to terminate January 2, 1959, the date

of termination of the Moldovan-Hauschildt lease. Rosa Fischer was made the general partner and Mary Hauschildt the limited one. Both partners knew of the restrictions in the lease against assignment or subleasing, and there is testimony that the Moldovans refused to consent to an assignment or sublease to Rosa Fischer. However, in the partnership agreement, the continuing existence of the Moldovan-Hauschildt lease was recognized in at least six separate paragraphs. (Paragraphs 9, 11, 14, 17, 19 and 21.)

The partnership agreement conferred on the limited partner the power to terminate the partnership. Paragraph 19 of the agreement provided in part:

"The Limited Partner is hereby given the right to terminate this limited partnership and;

"(a) To resume complete ownership and assume management of the business, . . ."

Paragraph 20 provided: "Termination of the Limited Partnership under the above paragraph 19 shall be effective upon the Limited Partner giving the General Partner notice thereof, and the General Partner shall not be entitled to an accounting or to reimbursement of any payments made under this agreement to the Limited Partner."

Pursuant to the terms of the partnership agreement Rosa Fischer paid Mary Hauschildt $1,000 on the date of the execution of the agreement, and on January 2, 1955, paid her a second $1,000,* and began operation of the business.† Almost immediately the Moldovans and Mary Hauschildt became dissatisfied with the way Rosa Fischer was operating the business. That this dissatisfaction was reasonable was shown by evidence that in violation of law more patients were accepted than the state license permitted, that patients were given inadequate care, and that Rosa Fischer refused to allow the Moldovans or Mary Hauschildt entry to the premises. The situation got so bad that the Moldovans threatened to terminate their lease with Mary Hauschildt. In fact, on January 26, 1955, by written agreement, these parties "cancelled, terminated and rendered null and void and of no effect" this lease. As part of this termination agreement the

---

*After one dishonor the bank paid this check when presented for the second time.

†There is a conflict as to the nature of Rosa Fischer's presence on the premises. Appellant claims that she "took possession" of the leased premises, whereas respondents assert that appellant only "assumed management and control of the business."

Moldovans agreed to refund to Mary Hauschildt the $7,200 she had paid them in advance for the last year's rent under the lease. Then by a letter dated January 26, 1955, and personally delivered to her on the 27th, Rosa Fischer was formally notified by the Moldovans that the Moldovan-Hauschildt lease had been cancelled, that Fischer's right to possession of the premises had terminated, and that she should vacate the premises before January 27, 1955, at 3:30 p. m. By a letter from Mary Hauschildt dated January 27, 1955, and received January 29th, Rosa Fischer was formally notified that "by reason of your activities in the Rest Home which have exposed me to great liability under the lease and because of your failure to permit me entrance or to cooperate with me in any other way, I am obliged to terminate our partnership."

On January 27, 1955, at about 3 p. m., while Rosa Fischer was temporarily absent from the premises, the Moldovans and Mary Hauschildt retook possession and control of the property. These actions then followed, resulting in judgments for the Moldovans and Mary Hauschildt. In the action brought by the respondents it was decreed that the Moldovans owned the property and business in question; that the Moldovan-Hauschildt lease was lawfully terminated January 26, 1955; that the limited partnership was lawfully terminated January 27, 1955; that the lease was not assigned to the partnership; that Mary Hauschildt at all times prior to the termination of the lease was in lawful possession of the premises and that she had duly and regularly delivered possession of the premises and business to the Moldovans. In the action by appellant the decree was in substantially the same terms, plus the order that appellant was entitled to nothing under her complaint.

On these appeals appellant makes two main contentions: That respondents, as a matter of law, were guilty of a forcible entry and a forcible detainer, and that the judgments unlawfully forfeited her investment and earnings in the business. These arguments are directed mainly to the action in which appellant was plaintiff.

The first question presented is whether the evidence, as a matter of law, shows a forcible entry. It does not.

The civil offense involved is defined in section 1159 of the Code of Civil Procedure as follows:

"Every person is guilty of a forcible entry who either:

"1. By breaking open doors, windows, or other parts of a

house, or by any kind of violence or circumstances of terror enters upon or into any real property; or,

"2. Who, after entering peaceably upon any real property, turns out by force, threats, or menacing conduct, the party in possession."

The trial court found that the respondents entered the premises peacefully and without fraud, deceit, force, threat or intimidation of any kind. This finding is amply supported by the testimony of the three respondents that they used no force or intimidation in resuming control of the premises, by the testimony of a police officer present at the time, and by the testimony of three of Rosa Fischer's employees.

The trial court made no express finding in reference to subdivision 2 of section 1159. However, the trial court did find that all of the allegations in appellant's first cause of action were untrue. One of those allegations was that "the defendants . . . with sundry and blasphemous threats of bodily harm, . . . ordered all of plaintiff's employees from said property." Although at the trial the evidence was not specifically directed towards this aspect of the forcible entry cause of action, it is a fair inference from the evidence that the occupants of the premises were not forcefully removed after a peaceable entry.

Thus, appellant has failed to establish the essential element of the claimed unlawful entry. (*Edwards* v. *Bodkin,* 43 Cal.App. 405 [185 P. 423] ; *San Francisco etc. Soc.* v. *Leonard,* 17 Cal.App. 254 [119 P. 405].)

The next question presented is whether the evidence, as a matter of law, shows a forcible detainer. It does not.

This civil offense is defined in section 1160 of the Code of Civil Procedure as follows:

"Every person is guilty of a forcible detainer who either:

"1. By force, or by menaces and threats of violence, unlawfully holds and keeps the possession of any real property, whether the same was acquired peaceably or otherwise; or

"2. Who, in the night-time, or during the absence of the occupant of any lands, unlawfully enters upon real property, and who, after demand made for the surrender thereof, for the period of five days, refuses to surrender the same to such former occupant.

"The occupant of real property, within the meaning of this subdivision, is one who, within five days preceding such unlawful entry, was in the peaceable and undisturbed possession of such lands."

■ So far as subdivision one is concerned, the gist of the offense is retention of the property by force or threats of force. The trial court found that following the peaceable entry by respondents, Mary Hauschildt properly turned the property over to the Moldovans and that the Moldovans remained in peaceable possession "without the use of force, threat, fraud, deceit or intimidation of any kind whatsoever."

■ The court also found to be untrue the allegation of appellant's complaint that the respondents, after taking possession, "by means of threats of violence and intimidation, unlawfully hold and keep possession of said real property to the exclusion" of appellant. Appellant points to no evidence concerning the nature of the holding during the period following January 27th. The burden was on her. ■ The findings quoted are at least supported by the disputable presumption that "the law has been obeyed." (Code Civ. Proc., § 1963, subd. 33.) Moreover, the findings are supported by the testimony already referred to as to what happened on the afternoon of January 27th. While, as already pointed out, that testimony was directed mainly towards the nature of the entry, the questions and answers were sufficiently comprehensive to encompass the whole transaction on that afternoon, including the peaceable detention of the property after a peaceable entry had been made. (See *Baxley* v. *Western Loan & Bldg. Co.*, 135 Cal.App. 426 [27 P.2d 387].) Indulging in proper inferences in support of the findings, the evidence shows that no force was used or threatened upon entry, nor in turning out the occupants, nor in retaining possession of the premises. Thus, so far as subdivision one of section 1160 is concerned, the appeal must fail.

■ The problem as to whether there was a "forcible detainer" under subdivision 2 of the section presents a more complex question. Under this subdivision no force is required. Admittedly, Rosa Fischer caused to be served on all respondents the demand for a surrender of the premises mentioned in the section. The question is whether respondents' failure to comply with this demand violated this subdivision of the section.

The trial court found that the lease was never assigned to the partnership and that at all times prior to the termination of the lease and "re-delivery" of the premises to the Moldovans, Mary Hauschildt was "in possession of said premises and was the sole owner of all rights and benefits of

said lease, and was solely subject to all the duties and obligations of said lease.'' The allegation found in appellant's complaint that respondents, during appellant's absence, ''unlawfully'' entered the premises was found to be untrue. Whether these findings are supported turns, in part, upon the proper meaning of the terms ''occupant'' and ''unlawfully enters'' as those terms are used in the section.

Subdivision 2 of the section defines ''occupant'' as ''one who, within five days preceding such unlawful entry, was in the peaceable and undisturbed possession of such lands.''

Thus, in order to maintain such an action the plaintiff need only be an ''occupant'' of the premises as so defined, and be in peaceable possession of the premises. Questions of title and right to possession are not usually involved in such an action. (See *Bank of California* v. *Taaffe,* 76 Cal. 626 [18 P. 781] ; *Eichhorn* v. *De La Cantera,* 117 Cal.App.2d 50 [225 P.2d 70] ; *California Products, Inc.* v. *Mitchell,* 52 Cal.App. 312 [198 P. 646] ; *Ingram* v. *Slayton,* 33 Cal.App. 630 [165 P. 1026] ; *Dutcher* v. *Sanders,* 20 Cal.App. 549 [129 P. 809].) As some of these cases point out, the rule is designed to prevent even rightful owners or possessors from taking the law into their own hands and thereby contributing to breaches of the peace.

In the present case the evidence shows that Rosa Fischer, as the result of the agreement with Mary Hauschildt, had actual possession of the premises. The Moldovan-Hauschildt lease expressly contemplated that Mary Hauschildt might take a partner, and it is reasonable to expect that such a partner might occupy the place of business. Under the partnership agreement Rosa Fischer was required to perform all the terms and conditions of the lease, and was ''entitled to receive all of the benefits of said lease in every respect'' as though she were the lessee thereunder. The agreement further provided that Mary Hauschildt agrees to ''execute any instruments or do any other act necessary in order for . . . [Rosa Fischer] to acquire the benefits of said lease.'' The fact that there was no assignment or sublease does not negative the fact that Rosa Fischer was in actual physical possession of the premises. Of course, the fact that Rosa Fischer was temporarily absent from the premises when respondents took possession, did not prevent her from being the ''occupant'' of the premises, because possession through servants or agents is sufficient. (*Baker* v. *Dickson,* 62 Cal. 19.)

Respondents argue that Rosa Fischer was the agent and

general partner of Mary Hauschildt and, therefore, did not have exclusive possession of the premises. ■ It is the general rule that in order to maintain the action plaintiff's possession must be exclusive of that of defendant. (*Bittman* v. *Courington,* 86 Cal.App.2d 213 [194 P.2d 43].) Thus, an employee generally does not have such possession as will permit him to maintain such an action against his employer. (See generally 22 Am.Jur. p. 922, § 23.) ■ The question is, does this rule preclude a general partner from suing a limited partner in reference to the property where the partnership business is conducted? We think not, under the circumstances of this case. Appellant had the exclusive right to conduct the business. She was granted all the benefits of the lease. In such a case, the policy behind the statute of preventing possible breaches of the peace should extend to this case.

Thus, on this phase of the case, we conclude that appellant was an "occupant" of the premises, and that she had the legal capacity to bring this action against her limited partner and the owners of the property. However, in the absence of a "forceful" entry within the meaning of Code of Civil Procedure, sections 1159 and 1160, subdivision 1 (and we have held that the finding of no forceful entry is supported), and in the absence of an "unlawful" entry within the meaning of section 1160, subdivision 2, the appeal on this issue must fail.

■ As already pointed out, questions relating to the right to possession are not usually considered in such actions in determining whether the one resuming possession did so lawfully or unlawfully. But to this rule there is at least one exception. This exception was defined at length in the well reasoned case of *Baxley* v. *Western Loan & Bldg. Co.,* 135 Cal. App. 426 [27 P.2d 387]. That case stands for the proposition that where there is no force involved in the entry, and where the entry is pursuant to a contract between the parties, the entry is lawful, and no violation of section 1160, subdivision 2, has occurred. In that case the defendant was a corporate vendor of realty. Plaintiff's predecessor in interest was the vendee. The installment contract gave the vendor the right to reenter and to resume possession of the premises upon default of the vendee. The vendee did default in certain installment payments. While the vendee was in default he assigned his contract to the plaintiff. Plaintiff took possession of the property through a manager. This manager was informed

of the default and an agent of defendant, Campbell by name, informed the manager that he was taking possession on behalf of defendant. The manager cooperated, and installed Campbell in an apartment, and agreed to manage the property for defendant. Campbell remained on the premises. Plaintiff did not approve these arrangements, and demanded that Campbell leave the premises. He refused. The discussion became acrimonious, and force and threats of force were used by both parties. Plaintiff, after written demand on defendant for possession, brought an action for forcible entry and forcible detainer. It was first held that the entry was peaceable, possession having been secured in a peaceable manner, and the subsequent force and threats of force did not make the entry forcible. In reference to the forcible detainer action the court held that, although the general rule was that the right to possession would not be passed on in such cases, the instant case presented an exception to that rule. At page 430 the court stated: "There is an exception, however, to the general rule in actions charging *forcible detainer*. When contractual relations exist between the parties whereby the right to possession has been given to the one taking possession by means of the peaceable entry, then neither the entry nor detention of the property is 'unlawful' within the meaning of said section 1160 dealing with *forcible detainer*."

The court elaborated on the exception at page 431 in the following language: "Upon default in the payments, respondent was entitled to possession under the contract between the parties and could take possession if it could be done peaceably. . . . We are of the opinion that when respondent, acting under its right conferred upon it by the contract between the parties, obtained possession of the premises by means of a peaceable entry, neither the entry upon nor the detention of the premises was 'unlawful' within the meaning of the subdivisions of said sections relating to *forcible detainer*."

The principles upon which the exception is based have been recognized in other cases (*California Products, Inc.* v. *Mitchell*, 52 Cal.App. 312 [198 P. 646]; *Dutcher* v. *Sanders*, 20 Cal.App. 549 [129 P. 809]; *Lydon* v. *Beach*, 89 Cal.App. 69 [264 P. 511]), and apparently are in accord with the general rule in other jurisdictions. (See annotations 45 A.L.R. 313; 49 A.L.R. 517; 60 A.L.R. 280.)

The instant case clearly falls within the rule of the Baxley case. The partnership agreement conferred upon Hauschildt the right to terminate the partnership and to

resume complete ownership and management of the business. This right could be exercised if Rosa Fischer defaulted for more than 10 days in any of her financial obligations assumed under the agreement, or failed to comply with the terms of the lease. The trial court found that both conditions existed. These findings are supported. There is ample evidence that a payment due from Rosa Fischer of $400 on January 16, 1955, was not paid within 10 days or at all. There was also ample evidence that Rosa Fischer violated the terms of the lease. This evidence has already been referred to in another connection and need not be repeated. Thus, Mary Hauschildt and the Moldovans had contractual rights to enter the premises and to resume possession of the business. Thus, both the entry and retention of possession were lawful. Therefore, the trial court properly held that no cause of action under section 1160, subdivision 2, of the Code of Civil Procedure existed.

The last contention of appellant is that the judgments operate to forfeit her investment and earnings in the enterprise, and, as such, are contrary to law. The difficulty with this argument is that there is neither pleading nor proof on this issue. In her brief appellant claims that she was entitled to an accounting of the partnership affairs and a return, at least, of her $2,000 payments. But she did not ask for an accounting or for relief from the claimed forfeiture in her complaint. Appellant points to no evidence in the record whereby these issues were raised and her right to relief established. All of the cases on this problem emphasize the necessity of the party seeking such relief to plead and prove facts that will justify the court in granting it. (See *Freedman* v. *Rector, Wardens & V. of St. Matthias Parish*, 37 Cal. 2d 16 [230 P.2d 629, 31 A.L.R.2d 1], cited by appellant; *Barkis* v. *Scott*, 34 Cal.2d 116 [208 P.2d 367]; *Petersen* v. *Ridenour*, 135 Cal.App.2d 720 [287 P.2d 848].) In *Bird* v. *Kenworthy*, 43 Cal.2d 656, 659 [277 P.2d 1], the Supreme Court stated: "To have the benefit of the rule against unjust enrichment, the burden of proof is upon the defaulting vendee to show that the payments made by him exceed the vendor's damages." In *Palo & Dodini* v. *City of Oakland*, 79 Cal.App. 2d 739, 749 [180 P.2d 764], this court pointed out: "An examination of plaintiffs' complaint leaves considerable doubt as to on just what theory plaintiffs are proceeding. They nowhere allege facts upon which they might ask for relief from forfeiture nor do they offer to make 'full compensation to the other party' as required by section 3275 of the Civil

Code for relief in case of forfeiture." ▇▇ In the present case appellant simply pleaded that she had invested $4,117.92 in the business and prayed for judgment in that sum and that the damages be trebled. Thus, the complaint was simply one for triple damages under section 1174 of the Code of Civil Procedure.

▇▇ It is undoubtedly true that the provision of the partnership agreement (par. 20 above quoted) denying· to the general partner the right to an accounting and forfeiting her investment in the event of a termination of the partnership agreement is unenforceable. (*Hill* v. *Hearron,* 113 Cal. App.2d 763 [249 P.2d 54].) ▇▇ But in the absence of a request for an accounting and for relief from forfeiture, and proof on those issues, the court was without power to grant such relief. It may be that Rosa Fischer, if an unlawful forfeiture has here occurred (a point on which we express no opinion), may bring an independent action for an accounting of the partnership affairs. In such an action Mary Hauschildt could raise any defenses such as that her damages exceeded those of Fischer, illegality, unclean hands, statute of limitations, etc., that may be available to her. On these questions we also express no opinion. But it certainly was not error to fail to grant such relief in these proceedings where the issues were not raised.

The judgments appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.